971 F.2d 1487
 3 NDLR P 54
 Carlton JOHNSON, by Sharon JOHNSON as his next friend;
Stonewall Jackson Smith, deceased, by and through Frieda
Smith and John Smith; Melissa Camp, deceased, by and
through Cheparney Camp; and the Spina Bifida Association of
America; Plaintiffs-Appellants,
and
Sharon Johnson; and the Association for Persons With Severe
Handicaps, individually and on behalf of others
similarly situated, Plaintiffs,
v.
Webb THOMPSON, M.D., Chief of Staff and Medical Director,
Oklahoma Children's Memorial Hospital, in his individual and
official capacities; Jerry D. Razook, M.D., Attending
Assistant Professor of Pediatrics, Pediatric Cardiology
Service, Oklahoma Children's Memorial Hospital, in his
individual capacity; Gregory Herbeck, M.D., Intern
Department of Pediatrics, Oklahoma Children's Memorial
Hospital, in his individual capacity; Cynthia Houdesheldt,
M.D., in her individual capacity; Richard H. Gross, M.D.,
in his individual capacity; William R. Burkett, Patty
Eaton, Reginald Barnes, W.E. Farha, Joseph W. Stafford, Jane
Hartley, Virginia Kidd, John E. Orr, Wayne C. Chandler,
Members, Oklahoma Commission for Human Services; Robert
Bonar, Administrator, Children's Hospital of Oklahoma;
Andrew A. Lasser, C.E.O., Oklahoma Medical Center; Ron
Dorris, Chief Operation Officer, Oklahoma Medical Center;
Laura Tull, R.N.; Ruth Tatyrek, M.S.W.; John Stuemky,
M.D.; Michael P. Morris, M.D.; Benjamin Demps, Jr.,
Director, Oklahoma Department of Human Services; J. Andrew
Sullivan, M.D.; David Yngve, M.D.; William E. Barnes,
M.D.; Harriet Coussons, M.D.; and Alan Olson, M.D.,
Defendants-Appellees,
and
Thomas Pratt, M.D., J. Patrick Livingston, M.D., and W.J.
Craig, M.D., in their individual capacities, Defendants.
 No. 90-6107.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 6, 1992.
 
 Larry A. Tawwater of Lampkin, McCaffrey & Tawwater, Oklahoma City, Okl. (Ben T. Lampkin and Jo L. Slama of Lampkin, McCaffrey & Tawwater, and James Bopp, Jr., Thomas J. Marzen, and Mary M. Nimz of The National Legal Center for the Medically Dependent and Disabled, Inc., Indianapolis, Ind., with him on the brief), for plaintiffs-appellants Carlton Johnson, Stonewall Jackson Smith, and Melissa Camp.
 St. John Barrett, Washington, D.C., on the brief for plaintiff-appellant The Spina Bifida Ass'n of America.
 Robert C. Margo (John Wiggins and Cynthia L. Sparling with him on the brief) of Short Barnes Wiggins Margo & Adler, Oklahoma City, Okl., for defendants-appellees Richard Gross, M.D., J. Andrew Sullivan, M.D., David Yngve, M.D., William Barnes, M.D., Harriet Coussons, M.D., Webb Thompson, M.D., Jerry Razook, M.D., Gregory Herbeck, M.D., John Stuemky, M.D., Alan Olson, M.D., and Cynthia Houdesheldt, M.D.
 John G. Fears, Asst. General Counsel, Dept. of Human Services, Oklahoma Com'n for Human Services, Oklahoma City, Okl., for defendants-appellees Benjamin Demps, Jr., William R. Burkett, Patty Eaton, Reginald Barnes, W.E. Farha, Joseph W. Stafford, Jane Hartley, Virginia Kidd, John E. Orr, Wayne C. Chandler, Robert Bonar, Andrew A. Lasser, Ron Dorris, Laura Tull, R.N., and Ruth Tatyrek, M.S.W.
 Before HOLLOWAY and EBEL, Circuit Judges, and OWEN, District Judge.*
 EBEL, Circuit Judge.
 
 
 1
 This appeal requires us to confront a variety of issues regarding the medical treatment provided to certain infants born with spina bifida. We address primarily whether the infants' rights under the Constitution and under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, were violated. The district court entered judgment for the defendants. We affirm.
 
 I. Background
 
 2
 Plaintiffs-Appellants Carlton Johnson, Melissa Camp, and Stonewall Jackson Smith were all born with myelomeningocele ("MM"), a type of spina bifida, at Oklahoma Children's Memorial Hospital ("OCMH"). The appellants allege that they received discriminatory treatment based on their handicap and on their socioeconomic status. The parties sharply dispute many of the facts in this case. However, the record supports the following factual background.
 
 
 3
 Defendant-appellee Dr. Richard H. Gross led a team of doctors and other health professionals ("the MM team") at OCMH who treated newborn infants with myelomeningocele. This treatment, which includes surgery and the administering of antibiotics, must take place soon after birth. In some cases, however, the infant will not survive even with treatment. In such cases, treating the infant merely prolongs his or her suffering.
 
 
 4
 In conjunction with his work at the hospital, Dr. Gross performed a study and published an article, entitled Early Management and Decision Making for the Treatment of Myelomeningocele, 72 Pediatrics 450 (1983). This study covered the period 1977 through 1982, during which time the MM team evaluated sixty-nine infants born with myelomeningocele. The MM team recommended "vigorous treatment," i.e., surgery and antibiotics, for thirty-six of the infants. One of these infants later died of unrelated causes; the rest survived. The team recommended "supportive care," i.e., no treatment other than making the infants as comfortable as possible, for the remaining thirty-three infants. The parents of five infants in the latter group rejected the recommendations, and three of these infants survived. Several other infants survived without treatment for several months and were subsequently treated. The remaining twenty-four infants receiving supportive care died.
 
 
 5
 The appellants allege that when the MM team made its recommendations, it considered both medical and nonmedical criteria, the latter including the parents' socioeconomic status. The appellants allege that the MM team discriminated against infants who came from families that the team believed lacked the intellectual and financial resources to provide the appropriate continuing care for a child with MM. According to the appellants, the MM team was more likely to recommend only supportive care for infants from such families. The appellants further allege that the MM team did not inform parents of its consideration of such factors when it made its recommendation. Although the appellees argue that the parents made the ultimate treatment decision, parents of sixty-four of the sixty-nine infants followed the MM team's recommendation. Thus, the appellants argue, the MM team was the true decisionmaker.
 
 
 6
 Melissa Camp and Stonewall Jackson Smith were participants in the study. The team recommended, and each infant received, only supportive care; both died. Carlton Johnson was born after completion of the study, but while the team allegedly continued to use the study's criteria to make its recommendation. The MM team recommended and Johnson received only supportive care. He survived without treatment for seventeen months, when surgery was finally performed. He was still alive at the time of trial, but suffered a severe mental handicap allegedly due, in part, to the team's failure to treat him immediately.
 
 
 7
 The hospital changed its practice in 1984. Since then, all infants born with spina bifida have received vigorous treatment, with the exception of one infant for whom treatment clearly would have been futile.
 
 
 8
 The parents of Camp, Smith, and Johnson, on behalf of their children, together with the Spina Bifida Association of America ("SBAA") and the Association for Persons with Severe Handicaps ("the plaintiffs"), filed suit against the members of the MM team, various other physicians, and a number of state officials. The plaintiffs sought class certification on behalf of 156 potential members, all infants born with MM at OCMH during the pendency of the study and all those born afterward while OCMH allegedly continued to use the study criteria. In their complaint, the plaintiffs asserted causes of action from violations of rights arising under, among other sources, the Due Process Clause, the Equal Protection Clause, section 504 of the Rehabilitation Act of 1973 ("section 504"), and state law. The plaintiffs sought compensatory and punitive damages along with declaratory and injunctive relief.
 
 
 9
 The district court denied the plaintiff's application for class certification, 125 F.R.D. 169. In addition, the court dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), the cause of action brought under section 504. It granted summary judgment in favor of the defendants on the claims for declaratory and injunctive relief and accordingly dismissed from the action all defendants against whom the plaintiffs had sought only such relief. The court also granted summary judgment in favor of defendant Dr. Alan Olson.
 
 
 10
 Trial commenced in 1990 against the remaining defendants on the plaintiffs' claims based on 42 U.S.C. § 1983 and state common law negligence. Prior to submitting the case to the jury, however, the district court directed verdicts in favor of the defendants on all claims asserted on behalf of plaintiff Stonewall Jackson Smith, all claims asserted against defendants Dr. Gregory Herbeck and Dr. Jerry D. Razook, and all claims asserted under 42 U.S.C. § 1983. The court then submitted Carlton Johnson's and Melissa Camp's negligence claims against the remaining physician defendants to the jury, which found for the defendants.
 
 
 11
 Camp, Smith, and Johnson, together with the SBAA, filed a timely notice of appeal.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 II. Section 504
 
 12
 The appellants argue that the district court erred in dismissing their cause of action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Because the court dismissed this claim on the pleadings pursuant to Fed.R.Civ.P. 12(b)(6), we review its order de novo. Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989).
 
 
 13
 At the time this action was brought, section 504 provided in relevant part:
 
 
 14
 No otherwise qualified handicapped individual in the United States, as defined in [29 U.S.C. § 706(7) ], shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency....
 
 
 15
 29 U.S.C.A. § 794 (West 1985).[2] Thus, to state a claim under section 504, "a plaintiff must prove (1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." Strathie v. Department of Transp., 716 F.2d 227, 230 (3d Cir.1983) (citation omitted); see also Rothschild v. Grottenthaler, 907 F.2d 286, 289-90 (2d Cir.1990).
 
 
 16
 The district court held that "[w]hen the intervention of parental decision, well based on adequate medical briefings or not, necessarily lies in the path of the infant's receipt of the benefit, it cannot be said either that the infant is [']otherwise qualified['] or that the discrimination is [']solely['] because of handicap." R., Vol. I, Doc. 158, at 1. The appellants argue that if the MM team's actions rendered parental consent a sham, such "consent" cannot be considered an intervening cause that makes section 504 inapplicable. We agree with this argument by the appellants, but nonetheless conclude that the district court's dismissal of the section 504 claim was proper, albeit for different reasons.
 
 
 17
 Whether section 504 applies to "individual medical treatment decisions involving handicapped infants" is a controversial issue that the Supreme Court has expressly left open. See Bowen v. American Hosp. Ass'n., 476 U.S. 610, 624, 106 S.Ct. 2101, 2110, 90 L.Ed.2d 584 (1986) (plurality opinion). The appellants argue that the MM team's conduct constituted discrimination in violation of section 504 based on two principal grounds. They argue primarily that the team recommended only supportive care for Camp, Smith, and Johnson because their families were of low socioeconomic status. They argue secondarily that, in general, the team recommended supportive care for those infants as to whom they anticipated a greater degree of handicap. In addition, the SBAA makes a third argument that the hospital discriminated against all infants born with MM. We deal with each argument in turn.
 
 
 18
 A. Discrimination Based on Socioeconomic Status
 
 
 19
 In essence, the appellants argue that but for (1) having spina bifida and (2) being of low socioeconomic status, the MM team would not have recommended that they receive only supportive care. Because of the discrimination based on these two conditions, the appellants assert a violation of section 504. To evaluate their claim, we consider whether the appellants have met section 504's four conditions.
 
 
 20
 The Supreme Court's decision in Bowen establishes that the first condition--that infants born with spina bifida are "handicapped individuals" under the Rehabilitation Act of 1973--has been met. Although the Supreme Court did not issue a majority opinion in that case, seven Justices agreed that the term encompasses "an infant who is born with a congenital defect." See Bowen, 476 U.S. at 624, 106 S.Ct. at 2110 (opinion of Stevens, J., joined by Marshall, Blackmun & Powell, JJ.); id. at 652, 106 S.Ct. at 2125 (opinion of White, J., joined by Brennan & O'Connor, JJ.).
 
 
 21
 The appellants' complaint fails to satisfy both the second and third conditions. However, for purposes of our holding with regard to these particular allegations, we need address only the third condition, that the discrimination resulted "solely by reason of [the] handicap." 29 U.S.C. § 794. In essence, the appellants argue that the team discriminated against them in relation to other infants with spina bifida because of their low socioeconomic status. Section 504, by its very terms, does not cover discrimination among similarly handicapped persons. See Clark v. Cohen, 613 F.Supp. 684, 693 (E.D.Pa.1985), aff'd on other grounds, 794 F.2d 79 (3d Cir.), cert. denied, 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986). The word solely provides the key: the discrimination must result from the handicap and from the handicap alone. If others with the same handicap do not suffer the discrimination, then the discrimination does not result "solely by reason of [the] handicap." Here, the appellants allege that the discrimination resulted at least in part from their low socioeconomic status. That discrimination is not actionable under section 504. Accordingly, we hold that the district court correctly dismissed the causes of action based on those allegations for failure to state a claim under section 504.
 
 
 22
 B. Discrimination Based on Degree of Handicap
 
 
 23
 The appellants argue that the MM team "used the anticipated degree of handicap as a basis for recommending that beneficial medical treatment not be provided" and in so doing violated section 504. Corrected Br. in Chief of Appellants Carlton Johnson, Stonewall Jackson Smith and Melissa Camp at 30 [hereinafter Appellants' Br. in Chief]. We reject this argument because the appellants fail to satisfy the second condition of section 504, that they were "otherwise qualified" for the treatment they did not receive.
 
 
 24
 The "otherwise qualified" language, when considered in conjunction with the "solely" language of the third condition, poses a formidable obstacle for anyone alleging discrimination in violation of section 504 based upon the failure to receive medical treatment for a birth defect. Such a plaintiff must prove that he or she was discriminatorily denied medical treatment because of the birth defect and, at the same time, must prove that, in spite of the birth defect, he or she was "otherwise qualified" to receive the denied medical treatment. Ordinarily, however, if such a person were not so handicapped, he or she would not need the medical treatment and thus would not "otherwise qualify" for the treatment.
 
 
 25
 We agree, therefore, with the Second Circuit's analysis in United States v. University Hospital, State University of New York at Stony Brook, 729 F.2d 144 (2d Cir.1984). In that case, the court considered the application of section 504, and its second requirement in particular, to infants born with multiple birth defects. The court stated that the term otherwise qualifiedannot ordinarily be applied "in the comparatively fluid context of medical treatment decisions without distorting its plain meaning. In common parlance, one would not ordinarily think of a newborn infant suffering from multiple birth defects as being 'otherwise qualified' to have corrective surgery performed." Id. at 156. The court reasoned, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say ... that a particular decision was 'discriminatory.' " Id. at 157.[3]
 
 
 26
 C. Discrimination Against All Infants with MM
 
 
 27
 The SBAA argues that the team discriminated against all infants with MM by designating them as subjects of a medical research project without their parents' knowledge or consent. Because all infants with MM were part of the study during its pendency, the SBAA contends the discrimination was "solely" due to the handicap, thereby meeting the third condition.
 
 
 28
 Under this argument, the appellants still fail to satisfy the second condition. The infants required the medical treatment sought only because they were born with MM. Thus, they were not "otherwise qualified" to receive the medical treatment denied to them because of the alleged discrimination.
 
 
 29
 Section 504 proscribes discrimination between the nonhandicapped and the "otherwise qualified" handicapped. It does not create any absolute substantive right to treatment. As the plurality stated in Bowen, " 'Section 504 seeks to assure evenhanded treatment'; 'neither the language, purpose, nor history of [section] 504 reveals an intent to impose an affirmative-action obligation' on recipients of federal financial assistance." Bowen, 476 U.S. at 640, 106 S.Ct. at 2118 (plurality opinion) (citations omitted). The plurality also noted that "nothing in the legislative history ... even remotely suggests that Congress contemplated the possibility that 'section 504 could or would be applied to treatment decisions[ ] involving defective newborn infants.' " Id. at 645 n. 33, 106 S.Ct. at 2121 n. 33 (citation omitted; alteration added). Without a showing that the nonhandicapped received the treatment denied to the "otherwise qualified" handicapped, the appellants cannot assert that a violation of section 504 has occurred.
 
 
 30
 In sum, we hold that the appellants failed to state a claim for violation of section 504 and that the district court therefore did not err in dismissing the claim brought under this section.
 
 III. Section 1983
 
 31
 In their complaint below, the appellants asserted that discrimination based on socioeconomic factors violated their procedural due process and equal protection rights, that the MM team's failure to provide vigorous treatment violated their substantive due process rights, that discrimination on the basis of handicap violated their rights under section 504, and that the MM team's recommendations deprived the parents of the opportunity to make decisions regarding their children's care in violation of their fundamental right to privacy. For each of these alleged violations of federal rights, the appellants brought a cause of action under 42 U.S.C. § 1983. The district court granted the appellees' motions for directed verdicts on all of these causes of action. The appellants now argue that the district court erred in doing so.
 
 
 32
 We review de novo the district court's ruling on a motion for directed verdict. Hill v. Goodyear Tire & Rubber, Inc., 918 F.2d 877, 880 (10th Cir.1990). We look to the record to see if the evidence, construed in the light most favorable to the nonmoving party, supports only one resolution of the issue. See Ralston Dev. Corp. v. United States, 937 F.2d 510, 512 (10th Cir.1991).
 
 
 33
 A. Discrimination on the Basis of Socioeconomic Status
 
 
 34
 The appellants argue that discrimination on the basis of socioeconomic status violates their right to due process and equal protection. The district court directed a verdict on this issue after concluding that no evidence supported the claim:
 
 
 35
 The article makes reference to socioeconomic factors as being considered, theoretically, but we don't have any evidence here that the children who were selected for [vigorous] treatment enjoyed a socioeconomic status any different from the ones that were recommended for supportive [care]. We don't have any evidence that wealthy parents' babies lived and poor parents' babies died; we don't have any evidence of a racial basis or anything other than a medical determination based upon degree of handicap and not on mere presence of handicap.
 
 
 36
 R., Vol. XX, at 592.
 
 
 37
 On appeal, the appellants argue that "[t]he constitutional right to be free from discrimination requires no citation." Appellants' Br. in Chief at 38. However, the district court did not direct a verdict because of a defect in the appellants' legal theory--it directed the verdict because of a lack of evidence. The appellants do not point us to any evidence that the district court may have overlooked. Indeed, they do not discuss the evidence at all.
 
 
 38
 The appellants presented as evidence only Dr. Gross' article, which indicates that the MM team considered socioeconomic factors in making its recommendation. However, the appellants presented no evidence that these factors affected the outcome of the recommendations in their individual cases. In other words, there is no evidence to establish that the appellants' socioeconomic status was a factor that caused the recommendation that they receive only supportive care. After our review of the record, we therefore agree with the district court that the appellants presented no evidence of discriminatory harm and that the district court correctly granted the motion for a directed verdict.
 
 B. Substantive Due Process
 
 39
 The appellants argue that the appellees' conduct violated their substantive due process rights by depriving them of their liberty interests in their own lives. Because of this deprivation, the appellants urge us to reverse the district court's decision to direct a verdict for the appellees on the appellants' section 1983 claim based on substantive due process.
 
 
 40
 The Due Process Clause does protect an interest in life. E.g., Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 271, 110 S.Ct. 2841, 2853, 111 L.Ed.2d 224 (1990). It does not follow, however, that the state necessarily has a constitutional duty to take affirmative steps to preserve life. In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court explained:
 
 
 41
 The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.
 
 
 42
 Id. at 195, 109 S.Ct. at 1002.
 
 
 43
 In effect, the appellants argue that substantive due process implies a right to treatment. Such a right exists only in narrow circumstances, however. Specifically, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. at 199-200, 109 S.Ct. at 1005 (citations omitted); see Youngberg v. Romeo, 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982) (involuntarily committed mental patient entitled to adequate medical care).
 
 
 44
 Infants born with spina bifida do not fall into the above category; accordingly, such infants cannot claim a constitutional right to treatment. Without such a right, the appellants cannot claim a deprivation of their liberty interest if the state failed to treat them. Cf. DeShaney, 489 U.S. at 196-97, 109 S.Ct. at 1003-04 ("If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.") (footnote omitted).
 
 
 45
 The fact that the state did provide some medical services does not alter this analysis. The First Circuit recently stated in an analogous situation involving a section 1983 claim:
 
 
 46
 Although the [state] may have played some causal role in the harm, it did so only because [the plaintiff] voluntarily availed himself of a [state] service. The [state] did not force [the plaintiff], against his will, to become dependent upon it. Thus, the [state's] actions, while possibly negligent or even willfully indifferent or reckless, did not take on the added character of violations of the federal Constitution.
 
 
 47
 Monahan v. Dorchester Counseling Center, Inc., 961 F.2d 987, 993 (1st Cir.1992). Similarly, the fact that the appellants had received some medical benefits at OCMH did not entitle them to further treatment based on substantive due process.
 
 
 48
 We accordingly affirm the district court's decision to grant a directed verdict for the appellees on the appellants' section 1983 cause of action for violation of their substantive due process rights.
 
 C. Section 504
 
 49
 The appellants assert a violation of their rights under section 504. We held in Part II of this opinion that no violation occurred, even taking all of the appellants' allegations as true. We therefore hold that the district court did not err in directing a verdict for the appellees on the appellants' section 1983 claim for violation of rights secured by section 504.
 
 D. Parental Rights
 
 50
 The parents argue that the MM team deprived them of the right to choose what type of medical care their children should receive. They contend that this right is inherently part of the right to privacy protected by the Fourteenth Amendment. Thus, they argue, the district court erred in directing a verdict for the appellees on their section 1983 cause of action for violation of their right to privacy.
 
 
 51
 The parents did not file a notice of appeal in their own right, however, but rather took this appeal only as representatives of the infants. If a party's name does not appear in a timely filed notice of appeal, that party has not appealed any adverse judgment. Torres v. Oakland Scavenger Co., 487 U.S. 312, 314-18, 108 S.Ct. 2405, 2407-09, 101 L.Ed.2d 285 (1988). The parents therefore are not parties to this appeal except as representatives of the infants,[4] and they have no standing to assert claims on their own behalf. Accordingly, we have no jurisdiction to hear the parents' argument regarding violation of their own rights.IV. Denial of Discovery of Identities of Study Participants
 
 
 52
 The appellants argue that the district court erred in denying their motion to compel discovery of the names of all participants in the MM team's study. We review orders relating to discovery for an abuse of discretion. See Willner v. Budig, 848 F.2d 1032, 1035-36 (10th Cir.1988), cert. denied, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). We hold that the district court did not abuse its discretion in denying the motion.
 
 
 53
 The magistrate who initially decided the appellants' motion concluded that the privacy interests of the other study participants outweighed the appellants' need for the information. The appellants appealed this decision to the district court, which upheld the magistrate's judgment.
 
 
 54
 The appellants argue that the information sought went to the heart of their allegations. The appellants presented the MM team's article as preliminary evidence. The members of the team contend, however, that they did not actually make "recommendations" to the parents, but rather only presented options to them, and that they did not actually base medical decisions on socioeconomic data. Thus, the appellants sought testimony from other study participants to show the existence of a concerted plan to use socioeconomic criteria in making recommendations for appropriate treatment and to refute the appellees' contention that they merely presented options to parents who made the final choice. To obtain such testimony, the appellants sought to learn the identities of these other participants.
 
 
 55
 The decision whether to administer heroic life-sustaining treatment to a severely handicapped newborn is one of the most heartwrenching decisions a parent can be called upon to make. See American Academy of Pediatrics v. Heckler, 561 F.Supp. 395, 396-97 (D.D.C.1983). Parents who have had to make such a decision are entitled to privacy and confidentiality. We believe that the magistrate was correct to balance the relevance and necessity of the information the appellants requested against the rights of other participants to maintain their privacy. See Lukaszewicz v. Ortho Pharmaceutical Corp., 90 F.R.D. 708, 709 (E.D.Wis.1981).
 
 
 56
 The appellees did provide information about the care rendered to each participant in the study. However, the appellees did not disclose the identities of the other infants. Thus, if the appellants desired to impeach the appellees' representations regarding treatment to those other infants, the appellants had to ascertain the identities of the infants' families through other means. That no doubt presented a difficult--perhaps impossible--task for the appellants. Nonetheless, given the important interests of the other infants and their families to preserve the confidential nature of their contacts with the physicians and the hospital, we cannot say that the magistrate abused his discretion in refusing to order this discovery.
 
 V. Other Issues
 
 57
 The appellants raise a number of other issues, which we need only discuss briefly.
 
 A. Statute of Limitations
 
 58
 The appellants argue that the district court erred in submitting to the jury the issue of whether Melissa Camp's negligence claim was time-barred. Because her father testified without contradiction that he did not learn of the MM team's actions until 1986, the appellants argue that the district court should have directed a verdict on this issue in favor of Melissa Camp. Instead, the court submitted the issue to the jury, which decided that Melissa Camp's claims were barred by the statute of limitations.
 
 
 59
 Under Oklahoma law, the relevant statute of limitations requires that a plaintiff bring a suit within "two years from the date [the] plaintiff knew or should have known, through the exercise of reasonable diligence[,] of the existence of the death, injury or condition complained of." Redwine v. Baptist Medical Center of Okla., Inc., 679 P.2d 1293, 1295 (Okla.1983). Moreover, "[w]hether plaintiff exercised 'reasonable diligence' in ascertaining the cause of ... death is a question of fact to be determined by the jury." Id. Because the issue was not when Melissa's father learned of the relevant facts, but rather when he should have learned of them, the district court properly denied the motion for a directed verdict.[5]
 
 B. Class Certification
 
 60
 The appellants contend that the district court erred in denying their application for class certification. We review the district court's decision for abuse of discretion. Pilots Against Illegal Dues v. Air Line Pilots Ass'n, 938 F.2d 1123, 1134 (10th Cir.1991). The district court held that the number of infants denied vigorous treatment was too small to meet the numerosity requirement of Fed.R.Civ.P. 23(a)(1). Given our deferential standard of review, we cannot say that the court's decision was in error. See Rex v. Owens, 585 F.2d 432, 436 (10th Cir.1978) ("no set formula" to determine whether numerosity requirement was met; instead, this is a fact-specific inquiry best left to discretion of district court).
 
 C. Declaratory and Injunctive Relief
 
 61
 The appellants argue that the district court erred in granting summary judgment to the appellees on the claims for declaratory and injunctive relief. Declaratory relief is discretionary, Green v. Mansour, 474 U.S. 64, 72, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985), and we find no abuse of that discretion in the court's declining to exercise jurisdiction over the appellants' claims for such relief. With regard to injunctive relief, we agree with the district court that the appellants' failure to present any evidence of continuing discrimination since 1984 renders concerns of future recurrence purely speculative. We therefore affirm the district court's grant of summary judgment on these issues.
 
 D. Jury Instructions
 
 62
 The appellants argue that the district court instructed the jury incorrectly regarding the differing standards of conduct applicable to appellees Dr. Gross and Dr. Thompson. We find no error in the district court's reliance on Fox v. Oklahoma Memorial Hospital, 774 P.2d 459 (Okla.1989), which held that a plaintiff must show gross negligence to overcome the sovereign immunity enjoyed by a physician employed at a state hospital at the time of Melissa Camp's birth. Id. at 461. Furthermore, the court specifically explained to the jury that it was to apply a different standard of negligence to Carlton Johnson's claims because they arose at a time when Oklahoma law was different. See R., Vol. V, Doc. 480, Instruction No. 15.
 
 
 63
 The appellants also challenge the adequacy of the informed consent instruction given to the jury. However, the appellants failed to object to the instruction below, and on review we do not find the instruction to be plain error.
 
 E. Summary Judgment for Dr. Olson
 
 64
 The appellants appeal the district court's denial of their motion for reconsideration of the dismissal of appellee Dr. Alan Olson on summary judgment. The standard of review for the denial of a motion for reconsideration depends on the nature of the underlying decision. See Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348-49 (3d Cir.1986). In this case, because the motion was for reconsideration of summary judgment, our review is de novo. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). After reviewing the record, we agree with the appellees that Dr. Olson's status as an attending physician did not connect him sufficiently to the treatment decisions made and that summary judgment was appropriate.
 
 
 65
 F. Directed Verdicts for Dr. Herbeck and Dr. Razook
 
 
 66
 The appellants argue that the district court incorrectly directed verdicts for appellees Dr. Herbeck and Dr. Razook regarding the decision to administer supportive care to Stonewall Jackson Smith. The appellants had argued below that Smith's mother had not given informed consent to withhold vigorous treatment.
 
 
 67
 Under Oklahoma law, a plaintiff must prove that injury resulted in order to present a prima facie case of breach of duty to inform. Scott v. Bradford, 606 P.2d 554, 557-59 (Okla.1979). The appellees sought to avoid liability by showing that Smith would not have survived even with vigorous treatment. In support, they introduced evidence that Smith suffered from anencephaly, a congenital absence of the brain; when such a condition is present, an infant cannot survive with or without treatment.
 
 
 68
 In response, the appellants introduced evidence that the test the appellees used to test for anencephaly was not always accurate. They also introduced testimony that Smith might have survived if the test were inaccurate and he did not have anencephaly. The appellants presented no evidence, however, that the test was in fact inaccurate in this particular case or that Smith would have survived. They therefore failed to show that an injury resulted from the lack of informed consent, as required under Scott. Under these circumstances, we affirm the district court's decision to direct a verdict.
 
 G. Other Rulings
 
 69
 The appellants challenge various evidentiary rulings and a ruling denying a mistrial. After reviewing the record, we find no abuse of discretion on these rulings.
 
 
 70
 The appellants also list several other issues in their "Statement of the Issues," but fail to brief them. In general, we do not address issues not briefed. See American Airlines v. Christensen, 967 F.2d 410, 415 n. 8 (10th Cir.1992) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for appeal.") (citing Fed.R.App.P. 28(a)(4), recodified as Fed.R.App.P. 28(a)(5)).
 
 VI. Conclusion
 
 71
 Because we hold that the district court committed no reversible error, we AFFIRM its judgment.
 
 
 
 *
 Honorable Richard Owen, Senior District Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 For convenience, we will refer to the infants Camp, Smith, and Johnson as "the appellants."
 
 
 [2]
 Section 504 was amended in 1986, after the appellants first filed this action, and again in 1988. Neither amendment substantively affects the meaning of the section as relevant to the instant appeal
 
 
 [3]
 Several jurists have hypothesized situations in which the handicap that forms the basis of the section 504 discrimination bears no relation to the medical treatment sought but denied. For example, Justice White stated in Bowen:
 An esophageal obstruction, for example, would not be part and parcel of the handicap of a baby suffering from Down's syndrome, and the infant would benefit from and is thus otherwise qualified for having the obstruction removed in spite of the handicap. In this case, the treatment is completely unrelated to the baby's handicapping condition. If an otherwise normal child would be given the identical treatment, so should the handicapped child if discrimination on the basis of the handicap is to be avoided.
 Bowen, 476 U.S. at 655, 106 S.Ct. at 2127 (footnote omitted) (White, J., dissenting); see also University Hospital, 729 F.2d at 162 (Winter, J., dissenting). We do not decide whether section 504 might apply in such a situation, but it would seem that the "otherwise qualified" condition might be satisfied under such a scenario. See Glanz v. Vernick, 750 F.Supp. 39, 45-46 (D.Mass.1990) (AIDS patient denied treatment for ear perforation stated claim under section 504). We do not find such a situation here.
 
 
 [4]
 Sharon Johnson, Carlton Johnson's mother, originally appeared as a plaintiff. She voluntarily dismissed her claims without prejudice and is no longer a party except as a representative of her son. See R., Vol. V, Doc. 469, at 2
 
 
 [5]
 In view of our resolution of this issue, the appellee's Motion to Strike Juror Affidavit and Request for Corrected Brief in Chief is moot