**John COCKRUM, b.n.f. Mandy Welch, Applicant,**

v.

**Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

**No. 6:93 cv 230.**

United States District Court, E.D. Texas, Tyler Division.

Feb. 12, 1996.

480

Mandy Welch and Richard Burr, Texas Defender Service, Houston, TX, for plaintiff.

John Jacks and Meredith Anne Martinez, Dana E. Parker, Asst. Dist. Atty., Stephani A. Stelmach, Asst. Atty. Gen., Attorney General's Office, Austin, TX, for defendant.

John Cockrum, Huntsville, TX, pro se.

## ORDER

JUSTICE, District Judge.

### I. *Introduction*

The applicant in the above-entitled and numbered civil action moves for a protective order. A hearing on the motion was held on January 5, 1996, and the parties were given leave to submit post-trial briefs. After considering the briefs and the testimony, both that offered at the hearing and that submitted by deposition, it is found that the motion for protective order should be granted in part and denied in part.

### II. *Background*

Sometime soon after he was sentenced to death, John Cockrum, the applicant in this habeas corpus action, began writing to his daughter, Tiffany Nicole Cockrum. He started this practice out of a concern that his daughter, who was four years old at the time he entered prison, would never know her father. In an effort to explain the circumstances of his life and to convey a sense of who he is, he has documented his reflections on his present circumstances and past history, and, while his writings are addressed to his daughter, they comprise a diary as much as a formal correspondence. He has continued writing to his daughter ever since entering prison, and after ten years on death row, his writings now fill over 1600 pages.

No one has read what Cockrum has written in these pages, not even the daughter to

whom they are addressed. After he finishes an entry, he sends it to his mother, Barbara Sutherland, who holds it with the others she has received. Sutherland is under instructions from Cockrum to hand over all the documents to his daughter when she reaches the age of twenty-one. At that time, Cockrum feels that his daughter will be sufficiently mature to understand the circumstances he discusses and the feelings he expresses.

The respondent served a notice of deposition and *subpoena duces tecum* on Barbara Sutherland.[1] The subpoena requires Sutherland to produce, among other things, all letters sent to her by the applicant. In response, Sutherland provided a number of documents—including all letters that her son has written to her personally—and raised a number of objections. The parties informally resolved all of the contentions, save the dispute over Cockrum's letters to his daughter.

Subsequently, Sutherland herself wrote a letter to the court regarding this matter. *Court's Exhibit No. 2.* In addition to expressing her opposition to the production of the letters to Cockrum's daughter, Sutherland objected to the subpoena to the extent that it asked for a journal that she kept.[2] Sutherland relates that after deciding to write a book about the experiences of families with a close relative on death row, she took handwritten notes and typed approximately fifteen pages of her story. She stored her work on a computer, but, through computer error, lost the fifteen pages of material. She was unable to locate her notes as of the time of the hearing, but nevertheless requests that they be protected from discovery. She also requests that any future journal or book that she should write about her experiences be protected from discovery. This letter was made a part of the motion for protective order, and Sutherland testified at the hearing about her concerns.

### III. *Legal Standard*

■ The person seeking a protective order bears the burden of establishing good cause and a specific need for protection. *Landry v. Air Line Pilots Ass'n,* 901 F.2d 404, 435 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). If good cause is shown, the court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). Framing an appropriate protective order necessarily entails consideration of the needs of the party seeking the discovery. *See Johnson ex rel. Johnson v. Thompson,* 971 F.2d 1487, 1497 (10th Cir.1992) (approving a decision to deny discovery based on a balancing of the relevance and necessity of the information sought against the privacy interests involved), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). Aside from these general principles, the Federal Rules of Civil Procedure, and the case law interpreting them, provide very little guidance in sorting through the specific concerns of this very unique case.

### A. Cockrum's Letters to His Daughter

■ Cockrum argues that the intensely private nature of the letters to his daughter establishes good cause for prohibiting their discovery. The right to privacy encompasses both an individual interest in avoiding the disclosure of personal matters, *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); and a zone of familial privacy, restricting state interference with family relationships, *see Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (right to privacy in the relationship between father and child); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (recognizing a "private realm of family life which the state cannot enter"). Both aspects of the right to privacy are implicated in this case. The State seeks to discover a very personal correspondence between father and daughter. These letters are the primary link of

---

1. A copy of the *subpoena duces tecum* is attached as an exhibit to the oral deposition of Barbara Sutherland. *Respondent's Supplemental Response,* Jan. 9, 1996, Ex. A.

2. The subpoena requests all notes made by Sutherland discussing Cockrum's background and family history.

communication between Cockrum and his daughter, and exposing the letters to public view would compromise, if not sever, that link.[3]

■ The State contends that by seeking a writ of habeas corpus, Cockrum has waived any right to privacy he might have. It is true that, generally speaking, a litigant seeking relief determines the issues to be brought before the court and cannot selectively choose what information to reveal and what information to withhold; however, a person does not thereby relinquish every aspect of his right to privacy. Rather than requiring discovery without regard for a party's privacy interests, the proper course is to balance a party's legitimate claims of privacy against the need of the opponent for the discovery. See Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D.Cal.1995) ("Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted.").

■ In evaluating the State's need for the discovery, it cannot be denied that the letters are relevant to this action. Specifically, the letters undoubtedly contain information relevant to the claim that Cockrum's attorneys provided ineffective assistance at the sentencing phase of trial by failing to investigate and present mitigating evidence regarding Cockrum's upbringing and his possible insanity at the time of the offense.[4] Cockrum believes that only two to three pages of the documents in question are relevant, but, considering the broad legal definition of relevance in the context of discovery,[5] the number is undoubtedly much higher. The ineffective assistance claim touches not only on the specifics of the murder and subsequent

trial, but also on Cockrum's entire family history and its effect on his mental condition. The letters surely discuss Cockrum's upbringing and provide insight into Cockrum's psychological state, both at the time of the crime and at the time he wrote the letters.

While relevant, the letters are not necessary to the State's case. The focus of an ineffective assistance claim is the information available to the attorneys at the time of trial. See Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Because these letters were written after the trial, they are, at best, only marginally relevant to a consideration of whether Cockrum's attorneys should have introduced mitigating evidence of Cockrum's family background or should have investigated his mental condition more thoroughly.

Furthermore, to the extent that the letters are direct evidence of Cockrum's mental state, it can safely be said that much of this information can be obtained from other sources. Sutherland has already produced every letter that Cockrum has written to her since he has been on death row, a correspondence spanning the same period of time as the letters to Tiffany Nicole Cockrum, and there is no reason to expect that his communications to his mother are any less candid than his communications to his daughter. The frank nature of these letters, which fill well over 1000 pages, provide ample evidence of Cockrum's psychological state.

---

3. An issue that has been inadequately addressed by the parties is the interest of Tiffany Nicole Cockrum in this matter. As beneficiary of these letters, she would seem to have a compelling privacy interest in her relationship with her father that would be compromised by this discovery request. However, she did not testify at the hearing, nor has anyone raised her interests on her behalf. Although her wishes are of great concern to this court, her wishes are only a matter of speculation, and thus cannot be taken into account in the disposition of this order.

4. In its original brief, the State argued that the letters would be relevant to a number of other claims as well. Respondent's Response, Dec. 8, 1995, at 4–5. Since the State's brief was filed, however, Cockrum has abandoned all of these additional claims. Thus, the letters' relevance to only the ineffective assistance claim need be discussed.

5. Absent a claim of privilege, almost any information that bears on the claims and defenses in issue, regardless of the information's admissibility, is subject to discovery. Fed.R.Civ.P. 26.

It is found that the privacy interests of the applicant outweigh the needs of the State for discovery, and that therefore good cause exists for the issuance of a protective order. The Federal Rules allow a court to order, as Cockrum requests, that the discovery not be had, Fed.R.Civ.P. 26(c)(1); but less drastic measures should first be considered, *cf. Bucher ex rel. J.B. v. Richardson Hosp. Authority,* 160 F.R.D. 88, 92 (N.D.Tex.1994) (pointing out that a movant carries a heavy burden when requesting an order prohibiting discovery). It is clear, however, that devices such as conducting an *in camera* review to separate the relevant from the irrelevant, or a protective order preventing public disclosure of the information, are not acceptable. For the court to leaf through these letters in a search for discoverable information, or to limit access to the letters to the attorneys immediately involved, would work an equivalent harm, in Cockrum's eyes, to publishing them in a newspaper or reading them in open court. Under these extraordinary circumstances, it is found that only an order preventing discovery altogether will adequately protect the privacy interests of Cockrum. Furthermore, it is found that because the privacy interests are compelling, the relevance of the letters is likely marginal, and the information in the letters is likely obtainable from other sources, discovery of the letters should not be had.

### B. Sutherland's Notes

■ An analysis of the objections raised by Sutherland in her letter to the court must begin with an acknowledgment that this issue may well be a moot one. Sutherland has irretrievably lost the portion of the book that she has already written, and she has thus far been unable to locate her handwritten notes. In addition, the hearing on the merits of this application is approximately one week away—thus, her request for protection from future requests for discovery seems unnecessary. The State will have no need for such discovery after the hearing, and, in any event, it is not appropriate for this court to prohibit the discovery of an as-yet-unwritten document.

Assuming that the notes are still in existence, it is found that Sutherland has not demonstrated good cause for a protective order. A crucial difference between the documents discussed above and the notes taken by Barbara Sutherland is that while the former were written with the intention of being read only by the author's daughter, the latter were intended to be transformed into a published book. Whatever privacy interest Sutherland has in jotting down her thoughts about her family history is lessened by the fact that the information was ultimately intended for public consumption. If these notes still exist, Sutherland shall turn them over to the State in accordance with the requirements of the *subpoena duces tecum.*

### IV. *Order*

Accordingly, it is **ADJUDGED** that the motion for a protective order, should be, and is hereby, **GRANTED IN PART AND DENIED IN PART.** It is **ORDERED** that the discovery of the John Cockrum's letters to his daughter shall not be had. Further, it is **ADJUDGED** that Barbara Sutherland shall produce any handwritten notes that she has taken regarding John Cockrum's background and family history.