**Cherilynn GRZAN, Plaintiff–Appellant,**

**v.**

**CHARTER HOSPITAL OF NORTHWEST INDIANA, a member of the Charter Medical Corporation, and Simon Greer, Jr., Defendants–Appellees.**

No. 96–2023.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1996.

Decided Jan. 9, 1997.

Earl I. Studtmann, Portage, IN, Ivan E. Bodensteiner (argued), Valparaiso, IN, for plaintiff–appellant.

Kathleen M. Maicher, Carl A. Greci, Spangler, Jennings & Dougherty, Merrillville, IN, Gilbert F. Blackmun (argued), Peter C. Bomberger, Blackmun, Bomberger & Moran, Highland, IN, for defendants–appellees.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

Cherilynn Grzan sued Charter Hospital of Northwest Indiana and Simon Greer under both section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, et seq., and Indiana tort law. The district court dismissed Grzan's section 504 claim under Fed.R.Civ.P. 12(b)(6), and dismissed without prejudice the supplemental common law state claims. Grzan appeals. We affirm.

## I.

Because this case was decided on a motion to dismiss, we accept as true all relevant facts alleged in Grzan's complaint. *Jenkins v. Heintz*, 25 F.3d 536, 537 (7th Cir.1994). The complaint, and thus the available facts, are brief.

Cherilynn Grzan was admitted to Charter Hospital as a psychiatric patient on March 6, 1992. Her diagnosis upon admission included "major depressive episode," "borderline personality disorder," and "post-traumatic stress disorder," which, the hospital concedes for purposes of the appeal, constitute a "handicap" under section 504 of the Rehabilitation Act. In addition to the above psychological handicap, Grzan had a history that included "sexual abuse, low self esteem and value, and feelings of inferiority."

Simon Greer, Jr. was employed by Charter as a "counselor." According to the complaint, his duties included "contact" with Grzan.[1] Shortly after Grzan's admission to Charter, Greer "took advantage of his position as a counselor and [Grzan's] vulnerable condition and entered into a relationship with her that included sexual relations in the hospital and at his home while [Grzan] was on a 'therapeutic pass.'" Grzan was discharged from the hospital on April 14, 1992, but continued her relationship with Greer. She moved in with him for two months and then moved into her own apartment which Greer rented for her. A month after moving into her own apartment, according to the complaint, she "escaped" from Greer. Two years later she sued both Greer and the hospital, alleging that Greer had caused her psychological and emotional harm requiring additional counseling and treatment.

Grzan's complaint bases federal liability on provisions of section 504, which prohibit recipients of federal funds from discriminating against persons who are handicapped.[2] Grzan claims the hospital discriminated against her because of her disability by depriving her of equal treatment for her condition. Additionally, Grzan alleges the hospital and Greer committed negligence, assault and battery, intentional infliction of emotional distress, and malpractice under Indiana tort law.

Charter and Greer successfully moved to dismiss Grzan's section 504 complaint for failure to state a claim. In granting their motions, the magistrate judge first reviewed the legislative history of section 504 and concluded that no evidence existed that Congress intended the Act to cover Grzan's complaint. Rather, Congress intended to

---

1. The only reference in the three-and-a-half page complaint to Greer's professional relationship with Grzan is that "his duties included contact with the plaintiff." Grzan's allegation that Greer had "contact" with Grzan suggests, without saying so, that Greer was *her* counselor, and thus had a professional relationship with her. This would be a necessary element of some of her state claims and, perhaps, her section 504 claim.

The sole phrase "had contact with" also could mean he met her in the hallway or cafeteria and had no professional relationship with her. We presume that Grzan's attorneys mean the former and have not engaged in artful pleading.

2. The hospital concedes it was the recipient of federal funds. Greer denies he was such a recipient.

provide equal employment opportunities and program accessibility to people denied employment or access solely because of their disability. Specifically, the magistrate found no case law applying section 504 to tortious conduct arising during a handicapped person's receipt of benefits. Further, the magistrate judge reasoned that dismissal was appropriate because Grzan's complaint failed to set out a prima facie case, specifically by failing to allege how she was otherwise qualified to receive the benefits of the psychiatric hospital and also how she was discriminated against solely because of her handicap. Because all federal claims were dismissed, the magistrate judge refused to exercise jurisdiction over Grzan's pendent state claims. Accordingly, the district court dismissed them as well. Grzan appeals to this court.[3]

## II.

■ We review *de novo* the dismissal of a complaint for failure to state a claim. *Jenkins v. Heintz*, 25 F.3d at 537. In doing so, we accept as true all well-pleaded allegations in the complaint. *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994). We will affirm the dismissal if "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). We do so here because even accepting as true what Grzan alleges in her complaint, she has failed to state a cause of action under section 504 of the Rehabilitation Act.

Section 504 of the Rehabilitation Act prohibits a federal grant recipient from discriminating against an otherwise qualified handicapped individual solely because of that disability. *Byrne v. Board of Educ., School of West Allis–West Milwaukee*, 979

F.2d 560, 563 (7th Cir.1992). The act provides, in relevant part:

> No otherwise qualified handicapped individual in the United States, … shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794.[4]

■ To survive a motion to dismiss, Grzan's prima facie case must set out four elements: "(1) that [she] is a 'handicapped individual' under the Act, (2) that [she] is 'otherwise qualified' for the [benefit] sought, (3) that [she] was [discriminated against] solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir.1992) (quoting *Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir.1983)), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). *See also Byrne*, 979 F.2d at 563 (setting out four elements of § 504 claim in employment context); *Cushing v. Moore*, 970 F.2d 1103, 1107 (2d Cir.1992) (setting out four elements in provision of medical services context).

■ We begin with Grzan's section 504 claim against Greer. The claim fails for a fundamental reason—Greer is not a recipient of federal funds, the fourth element above. Grzan's complaint does not allege that Greer was the recipient of federal funds, only that he was an employee of Charter and that Charter was the recipient of federal funds through the Medicaid and Medicare programs. This is not enough to implicate Greer under section 504. In *United States Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 605, 106 S.Ct. 2705, 2710, 91 L.Ed.2d 494 (1986), the Supreme Court focused on who could and who could

---

3. Both parties consented to the entry of final judgment by a magistrate judge pursuant to Fed. R.Civ.P. 73(a) and (b). Grzan appeals to this court directly pursuant to Fed.R.Civ.P. 73(b). Title 28 U.S.C. §§ 636(c)(3) & 1291 provide this court with jurisdiction over the appeal.

4. Section 504 was revised effective October 29, 1992. The new law substitutes the term "indi-

vidual with a disability" for the prior "handicapped individual." Additionally, following "solely by reason of," it substitutes "her or his disability" for the former "his handicap." Because Grzan's complaint centers on activities all occurring prior to October 1992, we set out the earlier version of the statute and discuss it in those terms.

not be held liable as recipient of federal funds under section 504. "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because ·it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." 477 U.S. at 605, 106 S.Ct. at 2711. By accepting the funds, one accepts the obligations that go along with it, namely, the obligation not to exclude from participation, deny benefits to, or subject to discrimination an otherwise qualified handicapped individual solely by reason of her handicap. Only by declining the federal financial assistance can one avoid this obligation. "By limiting coverage to recipients, Congress imposes the obligation of § 504 upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." *Id.* at 606, 106 S.Ct. at 2711.

■ "The coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement." *Gallagher v. Croghan Colonial Bank,* 89 F.3d 275, 278 (6th Cir.1996) (internal quotations omitted). Employees of the recipients of federal financial assistance are not in themselves the recipients of such assistance. Absent specific allegations to the contrary, we can only assume that as an employee who merely was paid a wage or salary, Greer was never in such a position and thus was never a recipient of federal funds. *See Paralyzed Veterans* at 608–10 (differentiating between indirect recipients of federal funds and indirect beneficiaries; benefitting from a federally financed program, even where the benefits are financial, does not necessarily constitute the receipt of federal funding).

■ Charter Hospital admits for purposes of the appeal that it receives federal financial assistance and thus potentially is subject to liability under section 504.[5] Nonetheless, Charter argues that Grzan's complaint fails to allege two elements of the prima facie case: (1) that she was "otherwise qualified," and (2) that she received discriminatory treatment solely because of her handicap. To address this argument, it is important to understand exactly what Grzan alleges in her complaint.

Grzan alleges that by entering into a sexual relationship with her, Greer interfered with her treatment. She is not alleging discrimination based on her sex, but discrimination based on her handicap. Thus she claims the sexual relationship was discriminatory not because it was sexual but because it interfered with the treatment for her disability.

Grzan does not allege she was barred access or denied treatment by Charter Hospital. Instead she alleges she received poor treatment, defective treatment, and thereby different and unequal treatment from the hospital by the actions of a counselor who, because she suffered from diagnosed depression, personality disorder, and posttraumatic stress disorder, was able to entice her into entering into a sexual relationship to the detriment of her psychiatric recovery. To succeed in her claim, however, Grzan must have been "otherwise qualified" for the benefit sought, which in this case was psychiatric treatment.

■ Grzan was not "otherwise qualified" to receive psychiatric treatment from Charter. "Otherwise qualified" means that were she not handicapped, Grzan would have qualified for the program or treatment she was denied because of her handicap. "An otherwise qualified person is one who is able to meet all of a program's requirements *in spite* of [her] handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99

---

**5.** While the sexual relationship between Grzan and Greer began at the hospital, which provided the opportunity for the two to meet, the bulk of it occurred following Grzan's discharge from the hospital after she moved in with Greer or, later, when she lived in an apartment he rented for her. Grzan provides no support, and we find none ourselves, for the proposition that section 504 requires a federal facility to monitor the dating habits or living arrangements of either its employees or its former patients. Grzan's complaint must be confined to the period when Charter actually may have been exposed to liability, the period when Grzan was a patient at its facility.

S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (emphasis added). Grzan is not "otherwise qualified" because, absent her handicap, she would not have been eligible for treatment in the first place. Charter Hospital treats psychiatric patients. Grzan was a psychiatric patient. She therefore qualified for Charter's program, and was in fact treated, albeit negligently according to her complaint. Had she not suffered from the psychiatric condition, she would not have qualified for Charter's program and would not have been treated, negligently or otherwise. "Without a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicapped, the appellants cannot assert that a violation of section 504 has occurred." *Johnson*, 971 F.2d at 1494.

Our conclusion that Grzan is not "otherwise qualified" is consistent with the decisions of other circuits. In *United States v. University Hospital, State University of New York at Stony Brook*, 729 F.2d 144, 156 (2d Cir.1984), the Second Circuit stated:

[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question.... [W]here medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services.

The court went on to restate, with approval, defendants' argument that "the 'otherwise qualified' criteria of section 504 cannot be meaningfully applied to a medical treatment decision." *Id.* In its analysis adopting the defendants' argument, the court noted that "the mainstream of cases under section 504 exemplifies [that] the phrase 'otherwise qualified' is geared toward relatively static programs or activities such as education, employment, and transportation systems." *Id.* (citations omitted). In *Johnson*, the Tenth Circuit followed *University Hospital* and held: "[T]he term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'" 971 F.2d at 1493–94 (quoting *University Hospital*, 729 F.2d at 156).

Allegations of discriminatory medical treatment do not fit into the four-element framework required by section 504. Rather, an examination of these elements as a whole suggests that the statute simply does not address such claims. The Tenth Circuit said as much in *Johnson*:

Such a plaintiff must prove that he or she was discriminatorily denied medical treatment because of the [handicap] and, at the same time, must prove that, in spite of the [handicap], he or she was 'otherwise qualified' to receive the denied medical treatment. Ordinarily, however, if such a person was not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment.

971 F.2d at 1493.

In addition to not being "otherwise qualified," Grzan also cannot demonstrate that she was denied treatment "solely by reason of her ... disability." This, too, is an element that does not fit allegations of discriminatory medical treatment, where all of the patients being treated also suffer from the same handicap, here a psychiatric condition. In *Johnson* the court also addressed this issue:

Section 504, by its very terms, does not cover discrimination among similarly handicapped persons. The word solely provides the key: the discrimination must come from the handicap and from the handicap alone. If others with the same handicap do not suffer the discrimination, then the discrimination does not result "solely by reason of [the] handicap."

\* \* \*

Section 504 proscribes discrimination between the non-handicapped and the "otherwise qualified" handicapped. It does not create any absolute substantive right to treatment.

*Id.* at 1493–94.

We agree with *Johnson* and *University Hospital* that section 504 is ill suited for bringing claims of discriminatory medical treatment against a facility when the plaintiff is comparing her treatment (medical or non-medical) to the treatment afforded oth-

er handicapped individuals. The statute protects against discriminatory treatment in favor of *non*-handicapped individuals. *Johnson*, 971 F.2d at 1493. This reasoning conforms with the purpose and legislative history of section 504. *See, e.g., Alexander v. Choate*, 469 U.S. 287, 295–99 & n. 7, 105 S.Ct. 712, 717–19 & n. 7, 83 L.Ed.2d 661 (1985) (examining legislative history to determine that the reach of § 504 is limited and not coextensive with Title VI); *University Hospital*, 729 F.2d at 155–60 (examining legislative history to determine inapplicability of § 504 to medical treatment decisions).

 "The general rule of statutory interpretation is that one must first look to the language of the statute and assume that its plain meaning 'accurately expresses the legislative purpose.'" *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir.1992) (explaining general rules of statutory interpretation; quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)). When a statute's language is straightforward, we may examine the legislative history only for the limited purpose of determining "whether it reflects 'a clearly expressed legislative intention to the contrary.'" *Shriver, id.* (quoting *United States v. Doherty*, 969 F.2d 425, 429 (7th Cir.1992)) (in turn quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Accordingly, we examine the legislative history of section 504 simply to ensure that the result provided by the plain meaning of the section, which all but excludes claims for disparate medical treatment among similarly handicapped persons, is not contrary to the legislative intent of Congress.

The Second Circuit conducted just such an examination in *University Hospital* and determined that Congress viewed section 504

primarily as an employment and program accessibility statute. 729 F.2d at 155–60. Noting that the medical decisionmaking process is complex, and that no two medical cases are likely to be the same, the court concluded that making a determination about whether treatment was based on "bona fide medical judgment" would be problematic and would require extensive litigation involving conflicting expert testimony. *Id.* at 157. "The legislative history ... indicates that congress never contemplated that section 504 would apply to treatment decisions of this nature." *Id.* The Senate Committee Report introducing section 504 "simply stated '[t]he bill further proclaims a policy of nondiscrimination against otherwise qualified handicapped individuals with respect to participation in or access to any [federally funded] program....'" *Id.* (quoting S.Rep. No. 1135, 92d Cong., 2d Sess. 49). The court explained that "[e]xamples of programs that the provision was designed to cover that were identified on the floor of the senate included housing and employment." *Id.* (citing 119 Cong.Rec 5882 (remarks of Sen. Cranston)).

Finally, in examining the post-enactment legislative history, the court concluded "both that Congress was primarily concerned with affording the handicapped access to federally-funded programs and activities, and that Congress never envisioned that ... section 504 [would apply] to treatment decisions." *Id.* at 159. (reviewing congressional oversight hearings). This absence of any indication that Congress intended section 504 to apply to treatment decision was all the more noteworthy given prior congressional measures limiting federal involvement in such decisions. *Id.* at 160 (reviewing earlier statutes).[6]

 *University Hospital* was a closer case than the one before us. Whereas it involved an institutional treatment decision,

6. Consistent with this legislative history, with few exceptions the cases brought under section 504 address discrimination in employment and program accessibility. *See, e.g., School Bd. of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (teacher fired because of contagious disease); *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct.

2361, 60 L.Ed.2d 980 (1979) (deaf applicant rejected by nursing program); *Carter v. Casa Central*, 849 F.2d 1048 (7th Cir.1988) (employee denied job because of multiple sclerosis); *Wagner by Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002 (3d Cir.1995) (woman denied access to intermediate care nursing home due to her severe Alzheimer's disease).

here Grzan alleges only mistreatment by Greer. Grzan complains that she received treatment different from that received by other handicapped persons accepted into Charter's treatment program not because of any institutional policy but because of the aberrant conduct of one of Charter's counselors. In essence, Grzan alleges malpractice. Grzan's complaint fails because section 504 does not provide a federal malpractice tort remedy. Section 504 is materially identical to the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), which we recently held did not provide a remedy for medical malpractice. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the Americans With Disabilities Act, whereas a sick or injured but not disabled person-a person suffering from an acute viral infection, perhaps, or who has broken his leg, or who has a hernia or an inflamed gall bladder—must be content with the remedy that the state law of medical malpractice provides").[7]

Finally, it is noteworthy that Grzan herself admits that "the sexual relationship [with Greer] obviously was not a part of [her] treatment plan." Nor was the relationship part of Charter's program or activities. Section 504 protects Grzan only from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any *program of activity receiving financial assistance*...." 29 U.S.C. § 794 (emphasis added). Having admitted that her sexual relationship was not part of Charter's program or activity, Grzan effectively has admitted that her complaint is founded in tort rather than under section 504.

## III.

Grzan's allegations cannot meet the requirements of a prima facie case, and there is

no support in the text of section 504, its legislative history, or in case law for applying the law to Grzan's circumstances. Accordingly, her complaint fails to state a claim under the Rehabilitation Act. Dismissal was appropriate.

---

7. Grzan argues that when a counselor has exploited his relationship with a patient, Indiana tort law permits an action for malpractice under a "transference" theory. While this may be true, *see Doe by Roe v. Madison Center Hospital*, 652 N.E.2d 101, 105–07 (Ind.Ct.App.1995) (explaining transference theory in medical malpractice

context), this also reveals the true nature of Grzan's complaint: medical malpractice. And as we noted in *Bryant*, we do not believe that section 504 created a federal medical malpractice action based on transference theory for disabled psychiatric patients that is totally lacking for non-disabled psychiatric patients.