**Joseph MURDY, Petitioner**

v.

**BUREAU OF BLINDNESS & VISUAL SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 18, 1996.
Decided May 30, 1996.
Reargument Denied July 15, 1996.

Stephen S. Pennington, for Petitioner.

Jeffrey P. Schmoyer, Assistant Counsel, for Respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Joseph Murdy, a blind student, petitions for review of the February 14, 1995 order of the Department of Public Welfare, Office of Hearings and Appeals (Department) which adopted the recommendation of Hearing Officer Marsha Clay to deny Mr. Murdy's request for continued payment of tuition and related costs for the last semester of his undergraduate studies at the University of Pittsburgh. We affirm.

After a fair hearing on April 12, 1994, Hearing Officer Clay made the following Findings of Fact:

1. [Mr. Murdy] has been receiving BVS [Bureau of Visual Services] services since 1989 due to a visual impairment.

2. In July 1989 [Mr. Murdy] completed an Individualized Written Rehabilitation Program [program] which indicated that his long range vocational goal was to be a lawyer. This plan indicated that he was to complete course work on schedule, maintain a full credit load, and that work needed beyond eight semesters would be the client's responsibility.

3. In August 1989 [Mr. Murdy] enrolled in the University of Pittsburgh (Pitt) in their Bachelor of Arts program declaring a major in political science. His expected date of completion was May 1993.

4. [Mr. Murdy] needed special accommodations to complete his course work which included books being recorded in braille, using a Versa–Braille word processor, and readers for some of his assigned course material.

5. On July 23, 1990 and on August 13, 1991 [program] annual reviews were conducted which indicate that [Mr. Murdy] had maintained a 2.7 quality point average (QPA) and indicated that he was four and six credits behind schedule which must be made up at his own expense.

6. On August 18, 1992 James Bruce, BVS counselor, completed a [program] annual review which indicates that [Mr. Murdy]'s score was partially achieved because after six semesters of sponsorship he was eight credits behind schedule for graduation. The [program] indicated that the credit deficit would have to be made up at the client's own expense and he was furnished a copy.

7. At the completion of the spring 1993 term [Mr. Murdy] was nine credits short of obtaining his degree in Political Science. BVS sent [Mr. Murdy] a letter each year that explained the training regulations for continued sponsorship under BVS. The letter indicated that enrollment as a full time student which in most cases was 15 credits was required as well a maintaining a C average which is a 2.0 QPA.

8. In the fall semester 1993 [Mr. Murdy] registered at Pitt to complete his BA degree course work. He requested that BVS pay for that semester. BVS denied his request from which he filed a timely appeal on September 3, 1993.

9. [Mr. Murdy] completed course work in December 1993 for his BA in Political Science. He has not paid the tuition and did not receive a degree because the tuition has not been paid.

(Adjudication and Recommendation of Hearing Officer, January 30, 1995) (Citations omitted.)

Hearing Officer Clay came to the following conclusion:

The Hearing Officer concludes that the Department's decision is correct to deny [Mr. Murdy]'s request for additional sponsorship of undergraduate studies. He was made aware from the time of the initial [program] in July 1989 that his sponsorship from BVS was limited to eight semesters. In addition he was notified annually that he was behind in course work and that this would be his responsibility for paying for additional credits. [Mr. Murdy] did not indicate that he had a medical condition which rendered him unable to complete course work in any of the terms. He attended classes in each of the eight BVS sponsored semesters and maintained at least a 2.0 QPA. [Mr. Murdy] did not have full time student registration for classes during the spring term of 1990–91 which appears to have placed him behind. Since [Mr. Murdy] was made aware of the BVS decision to limit his sponsorship to eight terms when he began school and notify (sic) him on a continuing basis of their obligation and decision not to pay for additional credits, the Department has presented evidence that their decision is correct and in accordance with regulations cited in the Blind Manual § 6522.301 Section G. Accordingly, it is recommended that the appeal of the appellant be denied.

(Adjudication and Recommendation of Hearing Officer, January 30, 1995). The Office of Hearings and Appeals adopted Hearing Officer Clay's recommendation and denied Mr. Murdy's administrative appeal.

■ Mr. Murdy raises three issues for our review: (1) whether the Bureau violated the Rehabilitation Act of 1973, 29 U.S.C. § 701–796 (1996), by denying reasonable accommodation for his disability; (2) whether the Bureau violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution; and, (3) whether the Bureau's policy of not funding training beyond the time period normally associated with the program is inflexible and unrealistic.[1]

■ Mr. Murdy argues that the Bureau violated the Rehabilitation Act of 1973 by failing to reasonably accommodate him and by denying him equal access to and meaning-

---

1. Our scope of review is limited to determining whether the Department's decision is supported by substantial evidence, is in accordance with the law, and is in compliance with the petitioner's constitutional rights. *Clark v. Department of Public Welfare*, 118 Pa.Cmwlth. 587, 546 A.2d 1277 (1988).

ful participation in the Bureau's rehabilitation services. Specifically, he argues that the Bureau failed to make a reasonable accommodation to him when it sent his individualized written rehabilitation programs and other materials in print, not Braille. He contends that because his counselor overlooked his disability by failing to provide agency information in an accessible format, the Bureau failed to provide appropriate accommodations which would make the program accessible to him. We must reject this argument.

■ First, Mr. Murdy raises this argument for the first time in its brief to this Court. Generally, issues not raised before the government agency will not be considered by the court on appeal. *Kelly v. Workmen's Compensation Appeal Board (Pepsi Cola Bottling Co.)*, 166 Pa.Cmwlth. 618, 647 A.2d 275, *petition for allowance of appeal denied*, 539 Pa. 693, 653 A.2d 1231 (1994). Specifically, this Court will not consider an issue that is raised for the first time in a petitioner's brief. *McMaster v. Department of Community Affairs*, 148 Pa.Cmwlth. 206, 610 A.2d 525 (1992), *petition for allowance of appeal denied*, 533 Pa. 639, 621 A.2d 583 (1993). Having raised the issue of the accommodation for the first time in his brief to this Court, Mr. Murdy has waived the issue.

Second, Mr. Murdy never denied knowledge of the contents of the programs. The original program executed by Mr. Murdy and his counselor was signed by Mr. Murdy and contained the statement that he was in complete agreement with the stated plans and objectives of the program and that he accepted its purpose and provisions. Mr. Murdy admitted that he was aware of the provision in the program that the Bureau would only sponsor him for eight semesters. This provision was repeated in each of the subsequent programs. Mr. Murdy never informed the Bureau that its communications to him were inadequate or failed to accommodate his disability. Mr. Murdy never requested that Bureau documents be provided to him in Braille. Finally, there is no evidence that the Bureau failed to communicate with Mr. Murdy. Mr. Murdy cannot now complain that the documents he received were inadequate or violated the Rehabilitation Act of 1973.

Mr. Murdy further argues that the Bureau violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by failing to provide an appropriate forum by which he could contest an internal agency policy. Mr. Murdy argues that the Bureau denied him funding for his last semester of college based on its internal policy that it would pay only for the time period in which sighted students attain a similar degree. This policy is found in the Bureau's Counselor Handbook, Chapter 11 and in the Department's Blind Manual, Section 6522.301(G). He contends that the Bureau provides no forum in which to contest this internal policy, thereby violating his due process rights.

■ The Bureau did not deprive Mr. Murdy of his right to due process. He was provided with an adequate process by which he could challenge the Bureau's policy and practice. When Mr. Murdy's request for additional funding was initially denied, he appealed and was granted a fair and impartial hearing. When the hearing officer recommended denying the request, her decision was reviewed by the Office of Hearings and Appeals. When that office adopted the Hearing Officer's recommendation to deny the request, Mr. Murdy appealed to this Court. Mr. Murdy has been provided with the elements of due process: notice and an opportunity to be heard. We find no violation of his constitutional due process rights.

Finally, Mr. Murdy argues that the Bureau policy is inflexible in that the only exception made has been in cases of medical necessity. He argues that there is no established procedure by which Bureau clients who qualify for an exception are informed of the availability of the exception, nor is there a forum in which they can voice their disagreement with the policy. Further, he argues that the Bureau's blanket policies violate the Rehabilitation Act and that, as a recipient of federal funds, the Bureau is required to make modifications in its academic requirements to ensure that those requirements do not discriminate on the basis of

handicap. The federal regulation provides as follows:

> (a) Academic requirements. A recipient [i.e. a state] to which this subchapter applies *shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student.* Academic requirements that the [state] can demonstrate are essential to the program of instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory within the meaning of this section. *Modifications may include changes in the length of time permitted for the completion of degree requirements,* substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific course are conducted.

45 C.F.R. § 84.44(a) (Emphasis added).

Mr. Murdy contends that the Bureau's policy of refusing to fund educational expenses beyond the time period when sighted students would obtain their degree is inflexible and unrealistic. He argues that, not only is he disadvantaged academically due to his disability, but that he experienced failure in his equipment, difficulty in securing reader services and accessible textbooks, and academic trouble with math. Mr. Murdy argues that each of these obstacles could justify making an exception to the eight-semester policy.

■ However, as we read it, the Bureau's policy that a client is normally expected to complete a four-year undergraduate program in eight semesters and the general limitation of Bureau sponsorship to such time period *is* flexible and subject to exception under appropriate extenuating circumstances. Chapter 11 of the Bureau's Counselor Handbook provides as follows:

> Full matriculation in the scheduling of courses should be maintained, i.e., continuity of training is such that the achievement of the undergraduate degree occurs within the time normally allotted by the school for other students to receive a degree. How-

ever, as mentioned above, *this policy is flexible in order to meet the individual needs of the client.* An example might be an acute health problem which arises during the client's course of training over which the client has no control. Careful judgment must be exercised in these situations in order to make the distinction between legitimate exceptions to policy versus the situation in which the client is simply not applying himself or herself to their studies.

(Appellant's brief, Appendix) (Emphasis added).

This policy, as written, is not a "blanket policy" against any funding beyond the prescribed period for obtaining a degree. It provides for flexibility based on individual clients' needs. Although an acute health problem is not the only possible exception to the general policy, it is an example of the type of problem a client must encounter in order to qualify for an extension of funding. Thus, in our view, the real question is not whether the policy itself is so inflexible as to be invalid on its face. If that were the issue, we believe that the policy would pass the flexibility test. The real issue is whether that policy, *as applied to Mr. Murdy,* has been administered so unfairly that it amounts to discriminatory treatment under 45 C.F.R. § 84.44(a).

■ After a review of Mr. Murdy's request, the Bureau determined that his circumstances did not justify continued sponsorship. The problems Mr. Murdy claims he experienced with unreliable equipment, his difficulty securing reader services and textbooks and his difficulty with math did not, in the opinion of the Bureau, rise to the level of an acute health problem. Further, he presented no evidence that any of these problems experienced by Mr. Murdy resulted in his failing or dropping a course. In fact, Mr. Murdy acknowledges that he never failed or dropped a course due to equipment problems. (N.T. at 94.)

The Bureau contends that Mr. Murdy's true reason for failing to complete the degree program in the prescribed time period is that carrying an average of fifteen credits over

four years is too difficult, especially with math courses. However, Mr. Murdy is not entitled to an exception to the policy merely because the degree program in which he was enrolled was academically demanding. The Bureau determined that the facts do not justify continued sponsorship of Mr. Murdy's academic career. This decision is supported by substantial evidence and we do not believe that we should substitute our judgment for that of the Bureau.

Having reviewed each of Mr. Murdy's arguments, we are compelled to affirm the order of the Office of Hearings and Appeals denying Mr. Murdy's request for continuing funding from the Bureau.

### ORDER

**AND NOW,** this 30th day of May, 1996, the order of the Office of Hearings and Appeals of the Department of Welfare, dated February 14, 1995 is hereby affirmed.