[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/30/98
THOMAS K. KAHN
CLERK

No. 96-3413

D. C. Docket No. 95-1336-CIV-T-23B

AUGUST BERG,

Plaintiff-Appellant,

versus

FLORIDA DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, DIVISION
OF VOCATIONAL REHABILITATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

**(December 30, 1998)**

Before TJOFLAT and BARKETT, Circuit Judges, and HOWARD*, Senior District Judge.

_____

*Honorable Alex T. Howard, Jr., Senior U.S. District Judge for the Southern District of Alabama,
sitting by designation.

TJOFLAT, Circuit Judge:

A deaf student appeals a magistrate judge's decision, following a bench trial, that a state vocational rehabilitation program's refusal to fund the student's legal education does not constitute discrimination on the basis of the student's disability in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq. (1994). We affirm.

I.

In 1991, August Berg, a profoundly deaf Florida resident, applied to the Florida Division of Vocational Rehabilitation (the "DVR"), a state agency that helps persons with disabilities obtain or retain employment, for funding to complete his college education so that he could become a psychological counselor. After graduating from high school, Berg had worked for several years in his father's construction company, but had declined his father's offer to take over the business. He had also earned an associate's degree from his local community college. When Berg applied to the DVR in 1991, he was employed as a maintenance worker at a home for adults with mental disabilities and was taking classes at the University of South Florida ("USF") towards a bachelor of arts degree in psychology. He asked the DVR to assist him in obtaining his B.A. degree.

The DVR certified Berg as disabled and eligible for assistance and met with Berg to develop an Individualized Written Rehabilitation Plan (an "IWRP") detailing both Berg's and the

DVR's agreed-upon responsibilities regarding Berg's further education.[1]  In the IWRP, Berg

stated that he would attend Gallaudet University in Washington D.C. to finish his B.A. in

psychology.  The DVR stated that it would finance Berg's education at Gallaudet through

December 1992 (his anticipated graduation date), paying for Berg's tuition, fees, books, and

supplies.  Berg was to pay for his own room, board, and other personal expenses at Gallaudet with

money from non-DVR sources.[2]

Berg entered Gallaudet in January 1992, but left in May to return to USF.  The DVR

continued to fund Berg's education at USF.[3]  During the summer of 1992, Berg worked for a

private company in a job utilizing his psychology skills and took classes at Rutgers University.

The DVR also paid for Berg's classes at Rutgers.  In January 1993, Berg made two requests of the

DVR.  First, he asked the DVR to pay for him to take electives at USF in the spring (past his

original projected graduation date as stated in his IWRP), which the DVR agreed to do.  Second,

he asked the DVR to pay for him to take a private course in preparation for the Law School

Aptitude Test; this request the DVR declined to fulfill, reminding Berg that such a course was not

part of his IWRP.  The DVR then offered Berg a post-graduation job as a DVR counselor for the

---

[1]  The DVR counselor assigned to Berg's case testified at trial that the DVR usually funds only those educational plans that terminate in an associate's degree.  She stated that the DVR made an exception in Berg's case because he represented that he was only two semesters away from completing his bachelor's degree.

[2]  The record reflects, however, that the DVR paid for Berg's room and board several times during Berg's education.

[3]  Although Berg's counselor testified at trial that DVR regulations require that any amendment to an IWRP be effected by redrafting the IWRP, none of the apparent changes to Berg's original IWRP was so memorialized.

3

deaf, but Berg's own counselor testified at trial that Berg "laughed" about the DVR's offer and summarily declined it.

Berg graduated from USF in May 1993 with a B.A. degree in psychology. He then informed the DVR that he no longer planned to be a counselor; instead, he wanted the DVR to pay

for him to (1) obtain a second degree in languages, and (2) attend law school to pursue both a J.D. and an LL.M. in international law. The DVR refused to fund these projects; it offered to help Berg find other employment as a counselor, but Berg rejected the offer. Berg himself sought no paid employment during the next year.

In May 1994, Berg entered Stetson University College of Law, a private law school in St. Petersburg, Florida. He continued to demand that the DVR finance his legal education, and filed an administrative complaint with the Department of Labor and Employment Security based on the DVR's refusal to do so. The complaint was dismissed.[4]

Berg then filed this suit in the United States Court for the Middle District of Florida, claiming that the DVR had discriminated against him on the basis of his disability in violation of section 504 of the Rehabilitation Act (the "Act"), 29 U.S.C. § 794 (1994), by refusing to fund his legal education. Berg sought injunctive relief requiring the DVR to pay for his Stetson tuition and all "auxiliary expenses," including interpreters, note-takers, an electronic alert system, and other assistance. He also claimed that he would need funding for eight semesters – instead of the

---

[4] No claims regarding the administrative complaint are before us.

4

usual six necessary to complete a J.D. – because his disability prevented him from taking a full

work load each semester.[5]

The parties agreed to have their case heard before a magistrate judge. On September 16,

1996, following a non-jury trial, the magistrate judge issued an opinion holding for the DVR.[6]

Judgment was entered pursuant to the opinion the same day.

## II.

## A.

Berg's sole argument both at trial and on appeal is that the DVR violated section 504 of

the Rehabilitation Act by refusing to pay for his legal education.[7] Section 504 reads in relevant

part:

---

[5] The magistrate judge presiding over Berg's trial noted that by September 1996 Berg had successfully completed 60 of the 88 credits necessary for graduation from law school.

[6] The parties also agreed that either party could appeal the magistrate judge's decision directly to this court under 28 U.S.C. § 636(c)(3) (1994), and Rule 73(c) of the Federal Rules of Civil Procedure, thereby obviating the need for an intermediate appeal to the district court.

[7] The Act provides for grants to states to fund "designated state agencies" that conduct vocational rehabilitation programs for individuals with disabilities. See 29 U.S.C. §§ 720(b), 721, 706(3)(A) (defining "designated state agencies"). These agencies are heavily regulated and subject to numerous restrictions on their allocation of resources. For instance, the Act states that "no training services in institutions of higher education shall be paid for [by the agencies] unless maximum efforts have been made to secure grant assistance, in whole or in part, from other sources to pay for such training." Id. § 723(a)(3). It appears that the DVR is a designated state agency; the record reflects that Berg's counselor referred to regulations governing designated state agencies when evaluating Berg's various funding requests. Because neither party has addressed the impact of the DVR's responsibilities under other portions of the Act on Berg's claim for relief under § 504, however, we do not address the issue.

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a) (1994). Berg was neither excluded from the DVR's vocational rehabilitation program, nor denied benefits by the program: he received funding for the entire remainder of his undergraduate education. Berg claims, however, that he was "subjected to discrimination" on the basis of his disability because the DVR refused to fund his law school education.

Berg sought to recover at trial under both "disparate treatment" and "disparate impact" theories.[8] Berg's disparate impact claim borders on the frivolous. Berg alleges that the DVR's refusal to provide him with funding for his law education creates a discriminatory "disparate impact" on those disabled persons who wish to become lawyers. As an initial matter, neither this circuit nor the Supreme Court has decided whether disparate impact claims are even cognizable under section 504. See Alexander v. Choate, 469 U.S. 287, 299, 105 S.Ct. 712, 719, 83 L.Ed.2d 661 (1985) ("While we reject the boundless notion that all disparate-impact showings constitute prima facie cases under § 504, we assume without deciding that § 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped."). We will assume, without passing on the issue, that because section 504 ensures that disabled persons enjoy access to federally-funded programs and activities equal to that of non-disabled persons, discrimination might be present when a facially-neutral state action creates an obstacle between disabled persons and access to federally-funded programs and activities that is greater than the obstacle for non-disabled persons. See Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir. 1996) (concluding that the

---

[8] Berg does not allege a violation of the Equal Protection Clause of the Fourteenth Amendment.

enforcement of Hawaii's animal quarantine law creates a "disparate impact" on visually disabled persons in violation of the American with Disabilities Act (the "ADA") by depriving them of their guide dogs, because visually disabled persons must have dogs to gain meaningful access to federally-funded programs and activities in Hawaii, whereas non-disabled persons do not need dogs for access). Berg, however, claims access to the legal profession. We fail to apprehend how (1) the legal profession could be considered a federally-funded program or activity, and (2) Berg's inability to gain a "free ride" to Stetson from the DVR is an obstacle between Berg and the legal profession that is greater than the obstacles encountered by a non-disabled person.

Berg's disparate treatment argument is equally unsupportable. To succeed on such a claim, Berg had to prove, by a preponderance of the evidence, that the DVR intended to discriminate against him on the basis of his disability. He utterly failed to do so.

The only evidence of discriminatory intent that Berg presented was his belief that the DVR did not apply its own policies "correctly" when deciding to deny him benefits.[9] Berg's counsel argued, during a hearing on the DVR's motion for summary judgment, that inconsistent application of employment policies is circumstantial evidence of discrimination. This may be true. Berg, however, failed to show that the policies at issue were ever applied to other DVR clients (although obviously they must have been), let alone applied in an inconsistent fashion. Thus, the fact that the DVR may have failed to follow its own policies in Berg's case cannot serve as the basis for an inference of intentional discrimination.

Moreover, the DVR counselor who initially refused Berg's request for law school funding testified at trial that she had never approved graduate school funding for any client, let alone

---

[9] A claim regarding a state agency's failure to follow its own policies is properly raised in an administrative hearing, not before this court.

funding for law school. Thus, Berg failed to establish that he had been treated any differently from anyone else when he was denied a free ride to Stetson.[10]

We leave for another day the question of whether section 504 even prohibits discrimination by a federally-funded program, such as the DVR, that only serves persons with disabilities, amongst its disabled clients in the distribution of benefits. Compare Johnson v. Thompson, 971 F.2d 1487, 1494 (10th Cir. 1992) ("Without a showing that the nonhandicapped received the [benefits] denied to the 'otherwise qualified' handicapped, the appellants cannot assert that a violation of section 504 has occurred.") with Zimring v. Olmstead, 138 F.3d 893, 899 (11th Cir. 1998) ("The ADA does not only mandate that individuals with disabilities be treated the same as persons without such disabilities."), cert. granted, 67 U.S.L.W. 3259 (U.S. Dec. 14, 1998) (No. 98-536). We know, however, that section 504 only prevents discrimination, and we fail to see how Berg – absent some direct or circumstantial evidence of discriminatory intent, neither of which is present in this case – could carry his ultimate burden of proving discrimination by the DVR if he cannot show he was treated differently from any other DVR client.

Finally, Berg argues that the DVR violated the "spirit" of the Rehabilitation Act by refusing to "maximize his unique abilities" by funding his legal education, and that this "violation" entitles him to relief under section 504. We adopt the following portion of the magistrate judge's opinion addressing this contention:

---

[10] Berg alleges in his complaint that the DVR "funded the educational costs of at least one other profoundly deaf student within the past five years to attend graduate school . . . ." And in his "First Request for Admissions," directed to the DVR as part of pre-trial discovery, Berg asked the DVR to admit that it had "paid a graduate school's tuition of at least one profoundly deaf Florida resident within the last five years," which the DVR did. Thus, Berg himself has cast serious doubt on any claim that the DVR discriminates against deaf disabled persons when allocating funds for graduate educational training.

This assertion raises a troubling threshold question: On what basis does one determine that the plaintiff will be unable to maximize his abilities unless he works as a lawyer rather than as a vocational rehabilitation counselor for the defendant? Is it median income? Or is it benefits to society? Or is it on some prestige scale? Or is it according to a public disapproval rating?

. . .

[A]ssuming arguendo that a lawyer is higher than a rehabilitation counselor on the food chain, or some other social scale, and that the plaintiff cannot be fulfilled if he does not become a lawyer, there is nothing in the Rehabilitation Act that mandates that the public, through the defendant, must finance the pursuit of that goal. The plaintiff's argument that there is such a mandate is based primarily upon language in the Act stating that a purpose of the statute is "to maximize employment." 29 U.S.C. 701(b). The plaintiff's argument, however, reads far too much into this phrase.

Following substantial amendments in 1992, the purposes of the Rehabilitation Act were stated as follows (29 U.S.C. 701(b)):

> The purposes of this chapter are –
> (1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, through –
>> (A) comprehensive and coordinated state-of-the-art programs of vocational rehabilitation;
>> (B) independent living centers and services;
>> (C) research;
>> (D) training;
>> (E) demonstration projects; and
>> (F) the guarantee of equal opportunity; and
> (2) to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with severe disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living.

Thus, the purpose of the Act does not speak of maximizing abilities, but simply of maximizing employment. In the context of the associated goals of "economic self-sufficiency, independence, and inclusion and integration into society," it is clear that the purpose of "maximiz[ing] employment" does not refer to the obtaining of some sort of premium employment.

This conclusion is confirmed by the reference to "meaningful" employment throughout the statement of congressional findings, purpose, and policy. Thus, the purpose points to "fulfilling the aspirations of . . . individuals with disabilities for meaningful and gainful employment and independent living."

9

29 U.S.C. 701(b)(2).  Similarly, the congressional findings speak of "meaningful opportunities for employment in integrated work settings through the provision of reasonable accommodations."  29 U.S.C. 701(a)(4).  Moreover, both the congressional findings and policy refer to the pursuit of "meaningful careers."  29 U.S.C. 701(a)(3)(E), (c)(1).

In short, the congressional findings, purpose, and policy focus upon the goal of meaningful employment, not optimal employment.  Consequently, there is nothing in § 701 that suggests that the defendant, after having educated the plaintiff for work in the field of vocational rehabilitation counseling and after having offered him a job in that field, must then put the plaintiff through law school.

We add only the observation that the laws in this country directed towards ending discrimination against people with disabilities are designed not to provide a disabled person with benefits because of his or her disability (except when the law authorizes an affirmative action program to correct past injustice), but to eliminate unfair burdens imposed only on those with disabilities.  See Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir. 1996) ("The purpose of the [Americans with Disabilities Act] is to place those with disabilities on an equal footing, not to give them an unfair advantage.").  Section 504 does not entitle Berg to a free legal education, see Johnson v. Thompson, 971 F.2d 1487, 1494 (10th Cir. 1992) (stating that § 504 "does not create any absolute substantive right" to the benefits sought by a disabled person); it only provides him with the right to enjoy access to that education as if he were non-disabled.  Although Berg may be unable to finance his education without assistance, that inability is due to Berg's lack of funds, not to discrimination based on the fact that he is disabled.  He may not, therefore, use section 504 of the Rehabilitation Act as a vehicle to obtain those funds from the DVR.

III.

10

For the foregoing reasons, the judgment of the magistrate judge is

AFFIRMED.

BARKETT, Circuit Judge, concurring:

I concur because I agree with the majority that Berg failed to prove that the Florida

Division of Vocational Rehabilitation (DVR) violated § 504 of the Rehabilitation Act by refusing

to fund his law school education. Section 504 applies to discrimination by a federally funded

entity based on disability against "otherwise qualified" individuals with disabilities. An individual with a disability is "otherwise qualified" if he or she meets the eligibility criteria for the benefit, either (a) in spite of her handicap, or (b) with the help of a reasonable accommodation. School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 289 n.17 (1987). The DVR denied Berg the benefit requested because it found that he had already been provided services sufficient to enable him to obtain "suitable employment." Because Berg was not in need of further rehabilitative services, he was not "otherwise qualified" to receive them. Berg was thus not "otherwise qualified," and no "accommodation" could change that. Moreover, Berg introduced no evidence that the DVR's decision not to fund him further was based on his deafness. The magistrate judge found that "the plaintiff's disability played no part in the defendant's denial of benefits for law school" and Berg has not shown that this finding was clearly erroneous. Nor has Berg shown that the DVR's suitable employment limitation results in a disparate impact on individuals with disabilities. Berg faces no disability-based obstacle to the attendance of law school and he has not adduced evidence of any disparate impact of the DVR's policy.