# 2004 DTA 75

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGION JUDICIAL DE SAN JUAN**
**PANEL I**

JOSE JIMENEZ IRIZARRY
Recurrido

v.

ADMINISTRACION DE REHABILITACION VOCACIONAL
Recurrente

Núm. KLRA-03-00741

San Juan, Puerto Rico, a 10 de marzo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces González Rivera y Rivera Martínez

## TEXTO COMPLETO DE LA SENTENCIA

Comparece el Procurador General en el presente recurso de revisión de decisión administrativa en representación de la Administración de Rehabilitación Vocacional (en adelante ARV) para solicitar la revisión y revocación de una resolución emitida el 7 de agosto de 2003 por la Oficina del Procurador de las Personas con Impedimentos (en adelante OPPI). Mediante la referida resolución, se resolvió que el querellante José Jiménez Irizarry fue privado de su meta vocacional de realizar estudios post-graduados en el idioma inglés. En consecuencia, se determinó que la ARV tenía que sufragarle los costos de sus estudios de maestría en el referido idioma para maximizar su empleabilidad.

Realicemos, en primer término, un recuento del trámite procesal pertinente al recurso que nos ocupa, según éstos surgen de las determinaciones de hechos del Oficial Examinador los cuales no están en controversia.

### I

El señor Jiménez Irizarry se ha desempeñado durante trece (13) años como maestro de inglés a nivel elemental. En el año 1995, tuvo que dejar el trabajo debido a su condición de esquizofrenia paranoide, condición que actualmente está en remisión. El 19 de noviembre de 1994, la Junta de Retiro para Maestros le aprobó un retiro no-ocupacional. En 1998 solicitó los servicios de la ARV, pues su meta vocacional era estudiar una maestría en la enseñanza del idioma inglés. Para tales fines, la ARV le solicitó entre otros documentos someter evidencia de poseer un Bachillerato en Ciencias en Educación y la correspondiente transcripción de créditos.

El señor Jiménez Irizarry solicitó a la Universidad de Temple el envió de su transcripción de créditos, pero la misma no le fue enviada. Ante tal situación, su consejero en la ARV le recomendó que estudiase barbería. A tales fines, el 19 de enero de 1999, se aprobó el Plan Individualizado de Rehabilitación para Empleo (en adelante PIRE). El señor Jiménez Irizarry comenzó sus estudios, pero debido a enfermedad en la familia fue necesario dejar los mismos.

Tiempo después, solicitó a la ARV le proveyera de nuevo los servicios. Volvió a reiterar que se le sufragara una meta en rehabilitación consistente con una maestría en inglés. Nuevamente, la Universidad de Temple omitió enviarle la copia de transcripción de créditos. Por lo que optó, de acuerdo al asesoramiento de su consejero, matricularse en un curso conducente a un grado asociado en computadoras. Mientras realizaba sus estudios, se enteró que la razón por las cuales la Universidad de Temple no le había enviado las transcripciones de créditos solicitadas, era por la existencia de una deuda. Pagada la misma, acudió ante su consejero y le manifestó nuevamente que su interés vocacional era proseguir estudios post-graduados en inglés hasta obtener un doctorado en dicha materia. El señor Jiménez Irizarry finalizó sus estudios en computadoras. Completó 43 créditos de los 90 exigidos para completar el grado asociado.

Posteriormente solicitó admisión al programa graduado en inglés del Recinto Universitario de Mayagüez (en adelante RUM), para la cual fue recomendado por su consejero en ARV. Fue admitido el 24 de junio de 2002. Una vez admitido al RUM, la ARV declinó suscribir un PIRE para autorizar el pago de sus estudios. El señor Jiménez aprobó con buenas calificaciones tres clases a nivel de maestría y otras de naturaleza remediales. Luego de celebrada vista administrativa, el 7 de agosto de 2003, la OPPI emitió la resolución recurrida. Mediante la misma resolvió que el querellante fue privado de su meta vocacional, una vez expresada la misma a su consejero. En consecuencia ordenó a la ARV pagar al señor Jiménez Irizarry los estudios conducentes a una maestría en inglés en el RUM. Ello como parte del PIRE, según los principios y derechos otorgados por la Ley de Rehabilitación de 1973.

Inconforme, la ARV plantea que hubo error al concluirse que la meta vocacional del señor Jiménez era estudiar una maestría en inglés cuando precisamente su meta era ser barbero y luego operador de computadora. Por lo que no le corresponde a la ARV sufragar los costos de los estudios de una maestría en el idioma inglés y que la determinación de ordenar el pago de dichos estudios es producto de una interpretación errónea del derecho. Por estar relacionador los señalamientos de error a las metas vocacionales del recurrido y al concepto *"maximizar la empleabilidad del recurrido"*, discutiremos en conjunto los señalamientos de error.

## II

La Ley de Rehabilitación de 1973 (Rehabilitation Act of 1973, 29 U.S.C.A. sec. 701, *et seq.*) autoriza la concesión de fondos federales para asistir a los estados, incluyendo a Puerto Rico, a proveer servicios de rehabilitación vocacional a personas con impedimentos. 29 U.S.C.A. sec. 720(b). Aunque la participación estatal en estos programas es voluntaria, aquellos estados que deciden recibir estos fondos federales deben comprometerse a cumplir las obligaciones establecidas en la ley y sus reglamentos. 29 U.S.C.A. sec. 721.

Entre los servicios de rehabilitación vocacional que se pueden ofrecer se encuentran:

*"Vocational and other training services, including personal and vocational adjustment training, books, tools, and other training materials, except that no training or training services in an institution of higher education (universities, colleges, community or junior colleges, vocational schools, technical institutes, or hospital schools of nursing) may be paid for with funds under this part unless maximum efforts have been made by the State unit and the individual to secure grant assistance in whole or in part from other sources to pay for that training."* 34 C.F.R. sec. 361.48(f). Véase además, 29 U.S.C.A. 723(a)(5).

Una persona es elegible para recibir los servicios bajo estos programas si, conforme a la ley, la persona: *"(A) is an individual with a disability...; and (B) requires vocational, rehabilitation services to prepare for, secure, retain, or regain employment"*. 29 U.S.C.A. sec. 722(a)(1).

En Puerto Rico, la Administración de Rehabilitación Vocacional es la *"unidad estatal designada"*, conforme a la Ley de Rehabilitación de 1973, que tiene la obligación de determinar el uso y desembolso de fondos federales destinados a servicios de rehabilitación vocacional. 18 L.P.R.A. sec. 1066, 1070; 29 U.S.C.A. sec 721.

La Ley Núm. 97 de 10 de junio de 2000, trasladó la Administración de Rehabilitación Vocacional que existía bajo el Departamento de la Familia al Departamento del Trabajo y Recursos Humanos. Según el Artículo 2 de dicha Ley, es política pública del Estado Libre Asociado de Puerto Rico que la ARV fomente la selección y transferencia de poderes, según este término está definido en la Ley Pública 93-112, según enmendada, conocida como *"Ley de Rehabilitación de 1973"*, a las personas con impedimentos físicos o mentales, mediante la prestación de servicios de rehabilitación vocacional consistentes con sus fortalezas, recursos, prioridades, intereses, habilidades y capacidades para ayudarlos a lograr un empleo remunerado, mejorar su calidad de vida, autosuficiencia y autoestima, con el propósito de integrarlos a la comunidad, conforme a los parámetros de la

*"Ley de Rehabilitación de 1973"*.

De esta forma, la Administración de Rehabilitación Vocacional tiene la obligación de desarrollar sus programas y de proveer servicios *"en armonía con las disposiciones de las leyes federales [i.e., la Ley Federal de Rehabilitación de 1973] y la reglamentación aplicable, armonizando y ajustando sus programas y servicios a tenor con esta política pública"*. Art. 2, Ley 97, *supra*, 18 L.P.R.A. sec. 1064 (anotaciones) y sec. 1064(d).

De otro lado, la Ley Núm. 2 de 27 de septiembre de 1985, 3 L.P.R.A. sec. 532, *et seq.*, la cual creó la Oficina del Procurador de las Personas con Impedimentos, le brindó a esta Oficina la facultad de poner en vigor las disposiciones de –entre otras–, la Ley de Rehabilitación de 1973. 3 L.P.R.A. sec. 532 y secs. 532(f)(a), 532 (g)(b).

Una vez una persona es elegible para recibir los beneficios que la Ley de Rehabilitación provee, hay que dilucidar qué criterios dicha ley provee para determinar lo que algunos comentaristas han llamado el problema de delimitar *"cuánto se paga"*. Kyle Murria & Lelia B. Helms, *The buck Stops Here; Graduate Level Disability Services and the 1998 Rehabilitation Act Amendments*, 28 J.C. & U.L. 1 (2001).

Tribunales de varias jurisdicciones en los Estados Unidos se han enfrentado al problema de delimitar el nivel y extensión de beneficios a los cuales una persona tiene derecho bajo la Ley Federal de Rehabilitación de 1973. *Buchanan v. Ives*, 793 F.Supp. 361 (D. Maine 1991); *Indiana Dept. of Human Servicies v. Firth*, 590 N.E. 2d 154 (C.A. Indiana, 1992); *Zingher v. Dept. of Aging and Disabilities*, 664 A.2d 256 (Vt. 1995); *Truss v. Tennessee Dept. of Human Services*, 1999 WL1072583 (Tenn.Ct.App); *Dolon v. Family and Social Services Admn.*, 715 N.E.2d 917 (Indiana, 1999); *Murdy v. Bureau of Blindness & Visual Servicies*, 677 A.2d 1280 (Penn. 1996); *Romano v. VESID*, 636 N.Y.S.2d 179 (N.Y., 1996); *Murphy v. VESID*, 243 N.Y.S.2d 365 (N.Y., 1997); *Campbell v. VESID*, 682 N.Y.S.2d 694 (N.Y., 1998); *Crowley v. Ohio Rehabilitation Services*, 711 N. E.2d 695 (Ohio, 1998); *Stevenson v. Commonwealth of Pennsylvania*, 648 A.2d 344 (Pa., 1994).

Principalmente, la adjudicación de este asunto ha gravitado alrededor de determinar en qué consiste la obligación de los estados participantes, según establecida en la sección 701 de la Ley de Rehabilitación. En específico, dicha sección dispone que el propósito de la ley es *"to **empower** individuals with disabilities to **maximize employment**, economic self-sufficiency, independence, and inclusión and integration into society"* 29 U.S.C.A. 701(b)(1). (Énfasis suplido.) Cumplir con este propósito es una obligación de los estados participantes. Por lo tanto, determinar exactamente qué significa esta obligación de *"maximize employment"*, ha sido en gran medida la tarea adjudicativa de estos foros.

En la interpretación de este concepto, a la luz de los objetivos de la Ley de Rehabilitación, algunos tribunales han delineado el alcance de las obligaciones y responsabilidades de las instituciones estatales encargadas de brindar los servicios de rehabilitación vocacional que la ley federal exige.

En *Buchanan v. Ives*, 793 F. Supp 361 (D. Maine 1991), el Tribunal de Distrito de los Estados Unidos para el Distrito de Maine resolvió que al analizar los parámetros de la obligación de la agencia estatal, debe prevalecer el significado común de la palabra *"maximizar"* que es aumento hasta el límite superior (*"to increase to the utmost extent"*). En dicho caso, el tribunal consideró la denegatoria de una agencia estatal de proveer servicios a una persona con impedimentos que deseaba desempeñarse como fotógrafo profesional independiente. El tribunal revocó la determinación de la agencia y ordenó que se provean los servicios requeridos. Al así actuar, interpretó literalmente que la obligación estatal de *"maximize... employability"* implica la obligación estatal de proveer beneficios para en efecto lograr que las personas con impedimentos alcancen sus metas en el nivel más alto posible. ■ De esta forma, ese tribunal dispuso que, a pesar que dicho concepto, no se encuentra definido en la ley, *"[b]y adding 'maximize' to §701, Congress was clearly stating its intent to establish a program which would provide services to assist clients in achieving their highest level of*

*achievement or a goal which is consistent with their maximum capacities and abilities." Buchanan*, 793 F. Supp., en la pág. 365.

En *Polkabla v. Comisión for the Blind*, 583 N.Y.S.2d 464 (App. Div. 1992), se revocó una determinación administrativa de no proveer ciertos servicios utilizando la misma interpretación literal del concepto *"maximizar"*, aplicada en *Buchanan*. A igual conclusión llegó ese mismo tribunal en *Chirico v. Office of Vocational and Educational Services for Individuals*, 627 N.Y.S.2d 815 (App. Div. 1995).

Posterior a estas decisiones del estado de New York que siguieron la interpretación literal del concepto *"maximizar"*. el tribunal de última instancia de dicho estado, en *Romano v. VESID*, 636 N.Y.S.2d 179 (N.Y., 1996; *Murphy v. VESID*, 243 N.Y.S.2d. 365 (N.Y., 1997); y *Campbell v. VESID*, 682 N.Y.S.2d 694 (N.Y., 1998), reinterpretó el significado de la palabra *"maximizar"* de la Ley de Rehabilitación de 1973, *supra*.

En *Murphy v. VESID*, *supra*, luego de haber sufragado los gastos de educación de bachillerato a una persona con impedimentos cuya meta vocacional establecida en el PIRE era obtener un empleo relacionado con servicios legales, la agencia encargada de implantar la Ley de Rehabilitación de New York (VESID) rechazó su solicitud de ayuda para cursar estudios en derecho. Al confirmar esta determinación, el tribunal señaló los parámetros bajo los cuales, a tenor con la Ley de Rehabilitación, se definen los derechos y obligaciones de las partes. Reconociendo que la Ley de Rehabilitación contempla el ofrecimiento de servicios vocacionales que ayuden a un individuo a alcanzar *"his or her 'highest level of achievement'"*, *Murphy*, *supra*, en la pág. 963, el tribunal aclaró que esta obligación de maximizar no es ilimitada.

*"Here, VESID and petitioner crafted an IWRP for the purpose of making petitioner employable in the field of legal services on a footing equal with nondisabled persons in the same field. Nothing in the record suggests this has not occurred. Indeed, petitioner is now in a position to reach her highest level of achievement, law school. And, like her nondisabled counterparts who may harbor the same ambition, she will have to seek various avenues of financing to achieve that goal, such as student loans, grants, scholarships and/or work-produced savings. VESID is not and should not be compelled to fund that effort inasmuch as its funds are finite. Murphy, supra, pág. 366."*

Otras jurisdicciones han alcanzado resultados análogos bajo análisis paralelos. Así, por ejemplo, en un caso anterior a *Romano, Murphy y Campbell*, en *Stevenson v. Commonwealth of Pennsylvania*, 648 A.2d 344 (Pa., 1994), un tribunal estatal confirmó una determinación administrativa que, tras proveer ayuda para completar estudios de bachillerato a una persona con impedimentos, rechazó su petición de asistencia adicional para completar una maestría. En su análisis, dicho tribunal rechazó aplicar al foco analítico de *Buchanan* resolviendo que, conforme a la Ley de Rehabilitación, la obligación gubernamental de proveer servicios de rehabilitación vocacional se limita a proveer aquellos servicios necesarios para garantizarle al individuo, según sus circunstancias particulares, un **empleo adecuado** y no el potencial más alto posible. Para ello, no es necesario que el gobierno provea el nivel más alto de servicios que se pueda concebir. █

Más recientemente, en *Berg v. Florida Department of Labor*, 163 F.3d 1251 (11 Cir., 1998), el Undécimo Circuito Federal rechazó una reclamación de una persona con impedimentos bajo la Ley de Rehabilitación que cuestionaba la denegatoria del estado de sufragarle sus estudios de derecho. Con relación a la obligación del gobierno de *"maximizar"*, según establecida en la Ley de Rehabilitación, el tribunal federal rechazó el argumento de que la ley obliga a los estados a *"maximizar las habilidades"* del beneficiario. En cambio, la ley requiere la maximización de empleo (*"maximize employment"*), pero sólo en aquel grado necesario para que la persona pueda obtener un empleo significativo, no necesariamente el mejor empleo posible. *"In short, the congressional findings, purpose, and policy focus upon the goal of meaningful employment, not optimal employment." Berg*, 163 F.3d, a la pág. 1256. *Berg*, *supra*, recalcó, además, que el objetivo principal de estas leyes es eliminar aquellas berreras que la sociedad le impone a las personas con impedimentos, colocándoles en

una posición similar al resto de las personas (*"equal footing"*), y no brindarles ventajas indebidas.

*"We add only the observation that the laws in this country directed towards ending discrimination against people with disabilities **are designed not to provide a disabled person with benefits because of his or her disability** (except when the law authorizes an affirmative action program to correct past injustice), **but to eliminate unfair burdens imposed only on those with disabilities**. See Kornblau v. Dade County, 86 F.3d 193, 194 (11ᵗʰ Cir. 1996). ("The purpose of the [Americans with Disabilities Act] is to place those with disabilities on an equal footing, **not to give them an un fair advantage.")** Berg, 163 F.3d, a la pág. 1256."* (Enfasis suplido.)

En *Truss v. Tenn. Dept. of Human Services*, 1999 Wl 1072583 (Tenn.Ct.App.), 1999, el Tribunal de Apelaciones de Tennessee, al rechazar explícitamente el enfoque de *Buchanan, supra*, enfatizó que tal perspectiva:

*"Would not only be financially infeasible, but would also hinder the ability of participating states to provide services to large numbers of disabled individuals. Rather, we think that, in using this language, Congress intended to require participating states to offer services to disabled individuals designed to render such individuals capable of attaining meaningful and gainful employment. Once such employment is attained, the disabled individual is then empowered with the opportunity to obtain his or her maximum employment as required by the Act."*

En el caso del epígrafe, el expediente demuestra que el PIRE inicial del señor Jiménez Irizarry expresó como meta de empleo ser barbero, en el segundo PIRE enmendado expresó como meta ser operador de computadoras. De las anotaciones de los consejeros se evidencia que durante el proceso de orientación, consejería y preparación del PIRE, el señor Jiménez no manifestó un interés de cambiar la meta de empleo a estudios de maestría en el idioma inglés. Asimismo, en las conclusiones de derecho de la resolución recurrida, el Procurador concluye erróneamente que la ARV no ha provisto al señor Jiménez Irizarry con las herramientas necesarias para maximizar su empleabilidad ni maximizó la capacidad de desarrollo de éste. Concluyó que las metas vocacionales seleccionadas por el señor Jiménez Irizarry como barbero y como operador de computadoras están por debajo de las habilidades e intereses vocacionales de éste. Que la ARV menoscabó el verdadero interés vocacional del señor Jiménez Irizarry, el cual es el estudio profundo del idioma inglés.

Al resolver el caso, rechazamos expresamente la interpretación literal del significado de la palabra maximizar de la Ley de Rehabilitación Federal de 1973, *supra*. La interpretación de las disposiciones del estatuto federal deben estar ubicados dentro del contexto de las disposiciones y objetivos de la ley. El objetivo perseguido por esta legislación es eliminar las barreras que la sociedad le impone a personas con impedimento. Esto se logra colocándolas en una posición similar al resto de las personas.

Lo que la ley requiere es que la agencia capacite y le brinde las herramientas necesarias al individuo para que por sí mismo pueda alcanzar su nivel más alto de potencial profesional, luego de colocarlo en el mismo nivel que el resto de las personas con aspiraciones similares.

Lo que realmente implica la obligación legal de *"maximizar"* la capacidad de empleo del beneficiario, es poner a éste en posición para que pueda alcanzar su *"highest level of achievement"* y no la obligación de velar y garantizar que en efecto lo haga. De esta forma, el gobierno cumple con su responsabilidad afirmativa de igualar a las personas con impedimentos para lograr su autosuficiencia económica, independencia y su integración en la comunidad. 29 US. C.A. secc. 701(b)/1). Véase, además, *Camphell*, N.Y.S. 2d.

Así mismo, reiteramos que es errónea la interpretación del Procurador de las Personas con Impedimentos a los efectos de que la ARB menoscabó las metas profesionales del señor Jiménez Irizarry, La ARV sufragó los

costos de matrícula, libros, material y equipo de adiestramiento, uniforme, hospedaje, manutención y promoción de empleo necesario para que el señor Jiménez obtuviese una adiestramiento en barbería y luego de operador de computadoras. Es decir, la ARV brindó al recurrido la oportunidad de adiestrarse para que pudiera obtener un empleo provechoso dentro de las referidas disciplinas en igualdad de condiciones que una persona no impedida. Recordemos que la ley requiere la maximización de empleo, sólo en aquel grado necesario para que la persona pueda obtener un empleo significativo, no necesariamente el mejor empleo posible.

### III

De otra parte, sabido es que nuestra facultad revisora está limitada por lo dispuesto en la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175; *Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P.R. 387 (1999)*. Esta requiere que los tribunales confirmen las determinaciones de hechos de una agencia administrativa si está sostenida por evidencia sustancial que obre en el expediente administrativo. *Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901 (1999); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 212-13 (1995)*.

A esos fines y para prevalecer, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901 (1999); Metropolitana S.E. v. A.R.P. E, supra; Hilton Hotel v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953)*. Esa exigencia pretende evitar que la parte afectada impugne las determinaciones de hechos con meras alegaciones, a la vez que sostiene la presunción de corrección y legalidad de que disfrutan las decisiones administrativas. *Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901, 905 (1999)*, citando a *Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987)*.

Por otro lado y sobre todo, es norma trillada que las interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto. *Metropolitana S.E. v. A.R.P.E., supra*, a la pág. 213. En ese sentido, la revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. *Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975)*. Esa deferencia al *"expertise"* administrativo solamente debe ceder cuando nos enfrentemos a una actuación irrazonable o ilegal. *Asoc. Vec. del Hospital San Jorge v. United Mediacal Corp.*, **2000 J.T.S. 21**, 561. De lo contrario, debemos brindarle gran deferencia a las interpretaciones que las agencias administrativas hacen de los estatutos que están encargados de poner en vigor, por cuanto dichos organismos cuentan con vasta experiencia y conocimiento en relación con la materia que trabajan día a día. *M.& V. Orhodonics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 189 (1984)*.

Ahora bien, la petición de revisión invoca el ejercicio de nuestra discreción a base del inciso (B) de la Regla 66 de nuestro Reglamento, 4 L.P.R.A. Ap. XXII-A, R. 66(B), que autoriza, como mencionáramos, la expedición del auto *"[s]i el remedio y la disposición de la orden, resolución o decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho, o producto de una actuación arbitraria, ilegal o irrazonable"*.

La sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2175, establece que las conclusiones de derecho emitidas por la agencia administrativa serán revisables en todos sus aspectos por el tribunal revisor. Sin embargo, cuando las cuestiones envueltas requieran la pericia del organismo administrativo, o sea, que se trate de interpretar las normas que les corresponde poner en vigor, los tribunales deben brindar gran deferencia y respeto a la agencia. *Mun. de San Juan v. J.C.A., 152 D.P.R.____ (2000)*, **2000 J.T.S. 193**, 474; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 436 (1997); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Vázquez v. A.R.P.E., 128 D.P.R. 513, 529-530 (1991)*. En este sentido, aunque la facultad del tribunal revisor para examinar cuestiones de derecho es amplia, nuestro Tribunal Supremo ha resuelto que lo determinante es si la actuación de la agencia es razonable. No es necesario que la

interpretación de la agencia sea la única posible, basta que sea razonable y que no tenga visos de arbitrariedad. *Aponte v. Alcalde de San Lorenzo*, 146 D.P.R. 675, 688-689 (1998); *Mun. de San Juan v. J.C.A., supra.* Esto es así, ya que los organismos administrativos cuentan con vasta experiencia y conocimiento en aquellos asuntos que trabajan día tras día. *Aponte v. Alcalde de San Lorenzo, supra.*

En *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656, 672-673 (1997), nuestro más alto foro explicó que, sin estar inmunes a la revisión judicial, se presume la corrección de las actuaciones administrativas. Los tribunales revisores no deben juzgar la sabiduría de las determinaciones de política pública que hacen las agencias administrativas dentro del marco de su pericia. *Id.*

No obstante, aunque las conclusiones de las agencias administrativas merecen gran deferencia, las mismas pueden ser variadas, modificadas o incluso revocadas, cuando no existen en la totalidad del récord prueba sustancial que las sostenga. *Misión Industrial de Puerto Rico, Inc. v. Junta de Planificación, supra.*

**IV**

Por lo anteriormente expuestos, se expide el auto de revisión solicitado y se revoca el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 75**

**1.** *Buchanan, supra,* interpretó la Ley de Rehabilitación según enmendada por la Ley Número 99-506 de 1986, la cual incluyó por primera vez la palabra maximizar. Dicha ley, en su sección 101, añadió como propósito de la Ley el desarrollar programas *"for individuals with handicaps in order to **maximize their employability**, independence, and integration into the workplace and the community"*. Pub. L. No. 99-506, §101, 1986 (100 Stat. 1807). Este lenguaje cambió con las enmiendas de 1992. Luego de esas enmiendas, la Ley de Rehabilitación lee como se ha citado previamente: *"to **empower individuals with disabilities to maximize employment**, economic self-sufficiency, independence, and inclusión and integration into society"*. 1992 PL102-569, October 29, 1992, 106 Stat 4344.

**2.** *"It would be unreasonable and impractical to require that the 'highest level of education achievable' be granted in every case of providing an individual with rehabilitation services.... The scope of services to be provided, and the level of education pursued, appears to be related to the degree of vocational disability, and not the attainment of the highest level of education achievable."* Stevenson, 648 A.2d, a la pág. 347.