**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 30, 2007**

**TENTH CIRCUIT**

MADINA BUHENDWA,

      Plaintiff-Appellant,

v.

UNIVERSITY OF COLORADO AT
BOULDER,

      Defendant-Appellee.

No. 05-1526
(D. Colorado)
(D.C. No. CIV-03-CV-485-REB-OES)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ALARCÓN**,[**] and **LUCERO,** Circuit Judges.


Madina Buhendwa appeals from the order dismissing her claims of

discrimination, asserted under Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 791 *et seq*. ("Rehabilitation Act"), and Title VI of the Civil Rights Act

of 1964 ("Title VI") against the University of Colorado at Boulder (the

---

[*]     This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

[**]     The Honorable Arthur L. Alarcón, Senior Circuit Judge, United States Court of Appeals, Ninth Circuit, sitting by designation.

"University"). She contends that the District Court erred in concluding that (1) she is not disabled under the Rehabilitation Act and was not discriminated against solely on the basis of her disability; and (2) she was not subjected to discrimination or denied benefits provided under Title VI because of her race. We affirm because we conclude that she has failed to demonstrate that she was subjected to discrimination based solely on her alleged disability or that she was denied benefits under Title VI because of her race.

## I

At the time of the events giving rise to this lawsuit, Ms. Buhendwa was a student at the University of Colorado at Boulder. She is a native of the nation of Zaire and of African ethnicity, but is now a lawful permanent resident of the United States. Her native language is Swahili. She also speaks Mashi, Lingala, French, and English. Ms. Buhendwa began taking classes at the University in the early 1990s. She eventually pursued pre-medical school studies with a triple major in kinesiology, classics, and psychology.

During her academic career, Ms. Buhendwa attempted to pass calculus five separate times. Her first four attempts resulted in course withdrawal or a failing grade.

## A

In the spring semester of 2001, Ms. Buhendwa enrolled in a calculus class taught by Professor Stanislaw Swierczkowski. While enrolled in this class, Ms.

Buhendwa visited the Student Academic Services Center. She met with Daniel

West, the University's English as a Second Language Program Coordinator. Ms.

Buhendwa complained to Mr. West that she experienced test-taking anxiety. At

her request, Mr. West addressed a letter to Professor Noel Lenski. It reads as

follows:

> Madina Buhendwa recently visited the Student Academic Services Center (SASC) for help with certain academic issues, one being test anxiety. Upon your approval this letter provides support for Madina to receive additional time for your course exams. Through discussion with Madina, she describes a common test anxiety for student's [sic] whose native language is not English. Her second language proficiency does not allow her to process reading and writing in English as efficiently as native English language speakers. Extended testing time can improve Madina's exam performance on a more equal level with native English speakers.
>
> Please note that test anxiety is not a recognized disorder within the ADA. Nonetheless, it is a legitimate learning challenge for countless students on the Boulder campus, and for those who are non-native speakers of English this challenge is exponential. Unfortunately, budget constraints prevent the SASC from offering assistance in this area beyond helping students identify the problem and supporting strategies for help. As Madina's professor, you could provide assistance within the testing environment. Additional time and, when possible, alternative testing space have proved helpful for other students with similar difficulties. If you elect to provide Madina additional time, we suggest 30 additional minutes for an hour exam and 45 additional minutes for a 75 minute exam.

Before the District Court, the University noted that Mr. West's letter was addressed to Professor Lenski, not Professor Swierczkowski, and argued that it was unauthenticated. However, before this Court, the University does not dispute that Professor Swierczkowski had knowledge of Mr. West's suggestion.

During the semester in which she was enrolled in Professor Swierczkowski's class, Ms. Buhendwa did not consult the University's Office of Disability Services to seek a determination on whether she was disabled. That office evaluates student disabilities and requests for accommodations under the Rehabilitation Act and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. Although Ms. Buhendwa claims that she injured her back and took pain medications while she was a member of Professor Swierczkowski's class, she testified in her deposition that she did not inform Professor Swierczkowski of the symptoms caused by taking her medication.

Students in Professor Swierczkowski's calculus course were required to take four examinations. Pursuant to Mr. West's suggestion, Professor Swierczkowski agreed to grant Ms. Buhendwa additional time to complete these examinations.

Ms. Buhendwa fell asleep before completing her final examination. When Professor Swierczkowski discovered that she was asleep, he declined to allow her extra time to complete the examination. She received a 58.5% on the final examination.

**B**

Professor Swierczkowski's course also included ten quizzes. In her deposition, Ms. Buhendwa testified that she had informed Professor Swierczkowski that throughout the semester she would have to miss some of his quizzes because she would "need to be at work." She further testified that Professor Swierczkowski originally agreed to ignore her missed quizzes when calculating her final grade. After she fell asleep during the final examination, however, he changed his mind and gave her a zero score on each of her missed quizzes. Ms. Buhendwa alleges in her affidavit that,

> [u]p until the time I fell asleep during the final exam, Professor Swierczkowski had been abiding by our agreement and calculating my [quiz] grade on the work I performed. After I fell asleep during the final exam, he unilaterally and arbitrarily changed the method he used to calculate my grade and instead calculated my grade based upon the total number of quizzes given.

Ms. Buhendwa testified in her deposition that she heard Professor Swierczkowski tell an unnamed blond student that she could take a quiz in his office, and she saw another unnamed blond student taking an examination or quiz in his office. She also testified that she heard Professor Swierczkowski tell one of these blond students that he would calculate her grade without considering the fact that she missed a quiz.

Despite the fact that Ms. Buhendwa never scored higher than 65% on any of her examinations and missed more than half the quizzes, Professor

-5-

Swierczkowski gave her a passing grade of "C-." Ms. Buhendwa had an overall grade point average ("GPA") of 1.98 at the end of the spring semester. She asserts in her brief that because she did not maintain a 2.0 or greater GPA, she was denied financial aid for the fall semester.

## II

This Court reviews a grant of summary judgment *de novo*. *McGuinness v. University of New Mexico School of Medicine*, 170 F.3d 974, 977 (10th Cir. 1998). Summary judgment is appropriate when there is "no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

To establish a genuine issue of material fact, a plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)).

## III

**A**

Ms. Buhendwa argues that the District Court erred when it granted summary judgment in favor of the University on her Rehabilitation Act claim. She contends that the District Court erred in concluding that her test-taking anxiety did not qualify as a disability and that she was not discriminated against based on her alleged disability. We note, however, that the District Court made no ruling regarding whether Ms. Buhendwa is disabled under the Rehabilitation Act. The District Court stated in the adopted Report and Recommendation that "[f]or purposes of the Motion for Summary Judgment, the University does not dispute that plaintiff is disabled[.]" We need not determine in this appeal whether test-taking anxiety is a mental or physical impairment because Ms. Buhendwa has conceded that she was not allowed additional time to complete her final examination because she fell asleep during the time allotted for the examination.

To establish a cause of action under the Rehabilitation Act, a plaintiff must show "(1) that he [or she] is a handicapped individual under the Act, (2) that he [or she] is otherwise qualified for the [benefit] sought, (3) that he [or she] was [discriminated against] solely by reason of his [or her] handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992) (internal quotation marks omitted) (alterations added and in original). Ms. Buhendwa bases her

Rehabilitation Act claim against the University as a student at the University, which receives federal funding.

Ms. Buhendwa focuses much of her argument on the first element of her claim, regarding whether she is "a handicapped individual under the Act." However, Ms. Buhendwa has failed to demonstrate that she was discriminated against solely by reason of her alleged handicap – the third essential element of her claim.

Ms. Buhendwa testified in her deposition that Professor Swierczkowski granted her extra time to complete all of her examinations, except for the final examination. She testified that he did not allow her extra time on the final examination because he discovered that she had fallen asleep. The alleged discrimination she experienced was not based on language-induced test-taking anxiety, but was instead caused by the fact that she fell asleep during the examination. Thus, summary judgment was appropriate on this claim.

**B**

Ms. Buhendwa also challenges the dismissal of her Title VI claim against the University. She asserts that she established a *prima facie* case of discrimination by showing that two "blond" students were given an opportunity, not afforded to her, to take quizzes and examinations in Professor Swierczkowski's office, and that one of the students was told by Professor Swierczkowski that, in calculating her grade, he would ignore her missed quizzes.

Title VI of the Civil Rights Act of 1964 provides, in pertinent part "that no person shall, 'on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity' covered by Title VI." *Alexander v. Sandoval*, 532 U.S. 275, 278 (2001). "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Id.* at 279.

A Title VI claim is analyzed using the burden-shifting analysis outlined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin County, OK*, 334 F.3d 928, 929-30 (10th Cir. 2003).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for [the discharge]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Id.* at 930 (quoting *Burdine*, 450 U.S. at 252-53).

In the context of employment discrimination cases, a *prima facie* claim of disparate treatment is established when a plaintiff shows: (1) that he or she is a

member of a protected class; (2) that he or she was disciplined; and (3) that similarly situated comparators were treated differently for the same or similar conduct. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005). "Individuals are considered 'similarly-situated' when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Ms. Buhendwa contends that, as a person of African ethnicity, she was treated differently for the same conduct as were her similarly situated comparators who were blond. She testified in her deposition that,

> [t]he blond girl was – when she did not do her – her quizzes, Professor Swierczkowski told her that she can do – she could come to the office to do it. And the day I was in his office, the gentleman who was sitting in his office was taking the exam, was also white, was a blond, young male, was taking – And he had told me that he would do that, he would at least – he would calculate my quiz based on the grade, based on the quiz that I have done. Then after I fall asleep, he gave me the zero.

Ms. Buhendwa testified that she was never offered the opportunity to take quizzes in Professor Swierczkowski's office, and, despite stating his intention to do otherwise, he counted all of her missed quizzes as zeros when calculating her final grade.

-10-

Ms. Buhendwa cites *Bryant* in support of her argument that such statements sufficiently establish a *prima facie* case of discrimination. In *Bryant*, this Court acknowledged that the black-student plaintiffs had set forth a *prima facie* case of discrimination when "[t]hey alleged that they were suspended after the February 8, 2000, fight while Caucasian students who participated in the fight were not suspended." 334 F.3d at 930. Thus, Ms. Buhendwa maintains that her deposition testimony regarding the unnamed "blond" students satisfies the *prima facie* case requirements articulated in *Bryant*. Her reliance on *Bryant* is misplaced.

Unlike the circumstances in *Bryant*, Ms. Buhendwa has failed to demonstrate that she was treated differently from the "blond" students for the same conduct. First, she testified that Professor Swierczkowski's sanction of scoring her missed quizzes as zeros was based upon the fact that she fell asleep during the final examination. In her deposition, Ms. Buhendwa stated that "[Professor Swierczkowski] had told me that. . .he would calculate my quiz based on the grade, based on the quiz that I have done. Then after I fall asleep, he gave me the zero." Ms. Buhendwa has presented no evidence that the "blond" students fell asleep during an examination and received no sanction, or whether Professor Swierczkowski ultimately calculated a "blond" student's grade differently.

Second, Ms. Buhendwa has presented no evidence that the "blond" students missed any quizzes, or that a "blond" male student was, in fact, making up a missed quiz in Professor Swierczkowski's office. She has also failed to

demonstrate the circumstances that motivated Professor Swierczkowski to offer a "blond" female student the opportunity to take a quiz in his office.

Accordingly we conclude that the District Court did not err in granting summary judgment on each of Ms. Buhendwa's claims.

AFFIRMED.

Entered for the court

Arthur L. Alarcón
Senior Circuit Judge